OPINION OF THE COURT
 

 Fuchsberg, J.
 

 At issue on this appeal is the timeliness of a suit brought to recover damages for a roofing materials supplier’s failure to live up to its express promise to repair its so-called "bonded” roof for a period of 20 years from the date of sale. We hold that a cause of action accrues upon each breach of that undertaking which occurs within the 20-year period and that the Statute of Limitations runs after six years from the date when the particular breach for which any such suit is brought has taken place.
 

 In 1952, plaintiff Bulova Watch Company contracted for the installation of a roof on its factory in Jackson Heights, Queens. As per its obligations under a construction agreement, the contractor purchased roofing materials from defendant Barrett Division, Allied Chemical & Dye Corporation, which issued two "20-Year Guaranty Bond[s]” to Bulova, one for its "Barrett Specification Pitch and Felt”, limited to the recovery of sums up to $8,000 and the other for its "Barrett flashing materials”, with a ceiling of $700. The bonds, which recited that they were effective as of February 20, 1953 and
 
 *609
 
 that the materials had "been applied in the matter specified by Barrett”, expressly guaranteed that Barrett would "at its own expense make any repairs (excepting repair of injury to said Roof caused by the roof base over which it is applied, or from any cause other than ordinary wear and tear by the elements) that may become necessary to maintain said Roof * * * in a water-tight condition”. In the event this obligation was not performed after due notice by Bulova, the instruments imposed liability on both Barrett and its surety, defendant Continental Casualty Company, which not only countersigned the bonds but permitted these imposingly inscribed documents to be captioned with its name. Defendant Celotex has since assumed Barrett’s obligation under the bonds.
 

 In effect, Bulova has alleged that the guaranteed roof turned out to be no more waterproof than a sieve. The first evidence of leakage purportedly came to light at least as early as September 6, 1955, and, despite repeated demands that the bonds’ terms be fulfilled, Barrett’s intermittent and allegedly inadequate attempts at repair did not prevent the defects from persisting throughout the balance of the 20 years. Even as the guarantee period was about to expire, Celotex, on February 14, 1973, found it necessary to respond to the recurring complaints by sending Bulova a letter acknowledging its responsibility to repair leaks present in the roof during the fall and winter of 1972-1973.
 

 Not much later, on July 10, 1973, Bulova brought this action to recover $65,000 in damages, the amount it would cost to replace the roof, on two theories, one for breach of an implied warranty of fitness for use and the other for breach of the express terms and conditions of the guarantee bonds. Perhaps because the two theories, though discernible, were intermingled in the pleadings, Special Term, on defendants’ motion for summary judgment, treated the suit as though it were premised on implied warranty alone. It then proceeded to dismiss on the ground that it was barred by the Statute of Limitations. The Appellate Division affirmed, without opinion (59 AD2d 831), and we granted leave to the plaintiff to appeal from so much of the order as dismissed the afore-mentioned causes of action.
 
 [1]
 
 For the reasons that follow, we believe there should be a reversal.
 

 
 *610
 
 Preliminarily, however, we acquiesce in the conclusion that Bulova’s implied warranty theory does not hold water. Even assuming that a warranty of fitness would arise under the original combined sale and services contract (but see
 
 Milau Assoc. v North Ave. Dev. Corp.,
 
 42 NY2d 482), the claim would be barred by the Statute of Limitations. For to determine whether such a claim is contractual rather than tortious in nature, we must look to the form of the remedy sought. And, since here Bulova asked only for recovery of the cost of the defective roof and not for any consequential damages, and therefore its warranty count is to be deemed one in contract alone, the cause of action arose at the time of the sale (see
 
 Sears, Roebuck & Co. v Enco Assoc.,
 
 43 NY2d 389, 394-395;
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395, 403;
 
 Citizens Utilities Co. v American Locomotive Co.,
 
 11 NY2d 409, 416). Moreover, the discovery rule of subdivision (2) of section 2-725 of the Uniform Commercial Code does not apply to transactions entered into prior to the code’s enactment in 1964 (Uniform Commercial Code, § 2-275, subd [4]; § 10-102, subd [2];
 
 Mendel v Pittsburgh Plate Glass Co.,
 
 25 NY2d 340, 342, n 1 [overruled in
 
 Victorson, supra]; Great Atlantic & Pacific Tea Co. v Rust Eng. Co.,
 
 75 Misc 2d 920).
 

 Thus, insofar as suit was posited on a warranted theory, whether the transaction here is looked at as a sale of goods or a services contract or a combination of both, in 1953 it was governed by the six-year contract Statute of Limitations.*
 
 [2]
 
 So measured, it was correctly held to be time-barred.
 

 Nevertheless, plaintiffs rights under the bonds enable its suit to weather the storm of defendants’ attacks. The bonds embody an agreement distinct from the contract to supply roofing materials. The former expressly promise to furnish whatever labor and materials are required for future repairs; the latter deals only with those provided at the time of the installation. The period during which performance may be required under the bonds is expressly stipulated to be 20 years; the only time specified for the performance of the sales contract was that of the original installation. The form of the bonds was one highlighting the obligation of Continental as
 
 *611
 
 surety, with Barrett as one of two signatories; under the sales contract Barrett was the sole obligor and Continental was not involved at all. Nor can it be doubted that the defendants expected Bulova to view the bonds as a special, separate and additional incentive to purchase a Barrett specification roof. Therefore, all the more so than in a case where a surety’s obligation is actually appended to a contract for the purchase of goods, a different Statute of Limitations may apply (see
 
 American Trading Co. v Fish,
 
 42 NY2d 20).
 

 On the limitations question, it is clear that the separate bond obligations, as agreements contemplating services, were subject to a six-year statute (CPLR 213, subd 2; 1 Weinstein-Korn-Miller, NY Civ Prac, par 213.13) running separately for the damages occasioned each time a breach of the obligation to repair the bonded roof occurred (see
 
 Putnam’s Sons v Owens,
 
 51 AD2d 527;
 
 Colpan Realty Corp. v Great Amer. Ins. Co.,
 
 83 Misc 2d 730, 731-732). For this reason, the bond claims arising within six years of the commencement of this suit are timely, provided they also arose during the 20-year period to which the guarantee relates.
 

 Finally, some comments are in order on the attempt by each of the parties to bring the rights flowing from the guarantee bonds under the umbrella of the "prospective warranty” doctrine. True, when a warranty expressly guarantees the future performance (as opposed to present condition) of goods, some courts have held that a cause of action for breach of warranty accrues when the breach is or should have been discovered (e.g.,
 
 Mittasch v Seal Lock Burial Vault,
 
 42 AD2d 573; see Schmitt & Hanko, For Whom the Bell Tolls — An Interpretation of the UCC’s Exception as to Accrual of a Cause of Action for Future Performance Warranties, 28 Ark L Rev 311; Case Note, 31 Fordham L Rev 609). So, for example, in
 
 Woodworth v Rice Bros. Co.
 
 (110 Misc 158, affd without opn 193 App Div 971, affd without opn 233 NY 557), a purchaser of fruit trees, though more than six years had elapsed from the date of sale, was allowed to sue his vendor when the saplings did not bear fruit "true to name” as promised. Other cases, however, have been more restrictive in their interpretation of such warranties (e.g.,
 
 Citizens Utilities Co. v American Locomotive Co.,
 
 11 NY2d 409,
 
 supra).
 

 But, there is no need at this juncture for us to endeavor to lift the fog that envelops the perhaps questionable distinctions made in these prospective warranty cases. Their analysis
 
 *612
 
 would, not be dispositive here because, as we have held, the defendants did not merely guarantee the condition or performance of the goods, but agreed to perform a service — to repair the roof.
 
 [3]
 
 Since breaches of this fully bargained-for promise are actionable for six years from their occurrence, Bulova may recover for all of the defendants’ derelictions of duty that it can prove took place between July 10, 1967 (six years prior to the institution of suit) and the date on which the bonds expired.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and plaintiffs second and fourth causes of action reinstated.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . The causes of action based on the warranty and bond theories were designated the second and fourth causes of action. Special Term also dismissed and severed two other causes of action sounding in negligence, to the extent that they pleaded damages which antedated the three-year tort Statute of Limitations period preceding
 
 *610
 
 the commencement of suit. We denied leave to appeal from so much of the Appellate Division’s order as related to the negligence causes because of nonfinality and therefore do not treat with them on this appeal (43 NY2d 844).
 

 [2]
 

 . As a result of the adoption of the Uniform Commercial Code in 1964, the statute is now four years in sales of goods cases (Uniform Commercial Code, § 2-275, subd [1]).
 

 [3]
 

 . Although it might be argued that the bonds’ prospective promises give rise to an implied future performance warranty, we note, without reaching the question, that no case appears to have applied the doctrine to implied warranties (Schmitt & Hanko, 28 Ark L Rev 311, 328; but see
 
 Mittasch v Seal Lock Burial Vault,
 
 42 AD2d 573, 574). Moreover, in the circumstances of the present case, it is just as likely that a promise to repair could be said to give rise to an inference that the roof was
 
 not
 
 of such quality as to last the 20 years covered by the bonds without supplemental work (cf.
 
 Owens v Patent Scaffolding Co. Div. of Harsco,
 
 77 Misc 2d 992).