Deutsche Bank National v. Quicken Loans

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: October 15, 2015      Decided: November 16, 2015)

Docket No. 14-3373-cv

————————

DEUTSCHE BANK NATIONAL TRUST COMPANY,
solely as Trustee of the GSR Mortgage Loan Trust 2007-OA1,

*Plaintiff-Appellant*,

–v.–

QUICKEN LOANS INC.,

*Defendant-Appellee.**

————————

Before:

    STRAUB, WESLEY, AND LIVINGSTON, *Circuit Judges*.

————————

Appeal from an August 4, 2014 opinion and order of the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

---

* The Clerk of the Court is respectfully directed to amend the official caption as noted above.

After the Federal Housing Finance Agency ("FHFA") filed a summons with notice in state court asserting breach of contractual obligations to repurchase mortgage loans that violated representations and warranties, Defendant-Appellee Quicken Loans Inc. ("Quicken") removed the action to federal court. There, Plaintiff-Appellant Deutsche Bank National Trust Company ("the Trustee"), as trustee of the subject residential mortgage-backed securities trust, took control of the litigation and filed the Complaint. Quicken moved to dismiss the suit as, *inter alia*, barred by the statute of limitations. The District Court concluded (1) the statute of limitations ran from the date the representations and warranties were made; (2) the extender provision of the Housing and Economic Recovery Act did not apply to the Trustee's claim; and (3) the Trustee's claim for breach of the implied covenant of good faith and fair dealing was duplicative. We agree with each conclusion. We therefore AFFIRM the District Court's dismissal of the action.

ZACHARY D. ROSENBAUM, Lowenstein Sandler LLP, New York, NY, *for Plaintiff-Appellant*.

JEFFREY B. MORGANROTH, Morganroth & Morganroth, PLLC, Birmingham, MI (Howard F. Sidman, Heidi A. Wendel, Michael O. Thayer, Jones Day, New York, NY), *for Defendants-Appellees*.

_____

WESLEY, *Circuit Judge*:

After the Federal Housing Finance Agency ("FHFA") filed a summons with notice in state court asserting breach of contractual obligations to repurchase mortgage loans that violated representations and warranties, Defendant-Appellee Quicken Loans Inc. ("Quicken") removed the action to

federal court.  There, Plaintiff-Appellant Deutsche Bank National Trust Company

("the Trustee"), as trustee of the subject residential mortgage-backed securities

trust, took control of the litigation and filed the Complaint.  Quicken moved to

dismiss the suit as, *inter alia*, barred by the statute of limitations.  The District

Court concluded (1) the statute of limitations ran from the date the

representations and warranties were made; (2) the extender provision of the

Housing and Economic Recovery Act did not apply to the Trustee's claim; and

(3) the Trustee's claim for breach of the implied covenant of good faith and fair

dealing was duplicative.  We now affirm each of the District Court's conclusions.

## BACKGROUND[1]

Quicken originated the mortgage loans at issue and sold them to nonparty

Goldman Sachs Mortgage Company ("the Sponsor") pursuant to a Purchase

Agreement dated June 1, 2006.  That Purchase Agreement included a series of

representations and warranties ("R&Ws") about the quality of the mortgage

loans and their compliance with specified underwriting and origination

---

[1] Unless otherwise noted, the following facts are taken from the District Court's opinion and the parties' briefs on appeal.  As required when reviewing a motion to dismiss, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the Trustee's favor.  *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).

guidelines.  Through a series of sales and assignments, the mortgage loans were deposited into a securitization trust; the Trustee received all the rights, title, and interest in the mortgage loans for the benefit of the certificateholders in the securitization.  Additionally, the Trustee received, as assignee, all the Sponsor's rights against Quicken, including its rights and remedies arising out of the R&Ws.  The securitization trust issued certificates representing interests in the mortgage loans to investors in a public offering, pursuant to a shelf registration statement filed with the U.S. Securities and Exchange Commission; the closing date of the securitization was May 8, 2007.  One of the certificate purchasers was the Federal Home Loan Mortgage Corporation ("Freddie Mac").

The R&Ws contained in the Purchase Agreement contained both transaction-level R&Ws—representations as to the characteristics of the transaction as a whole—and loan-level R&Ws—representations as to the characteristics of the individual mortgage loans.  The R&Ws collectively covered such subjects as Quicken's characteristics as originator as well as the features, quality, and risk profile of the loans contained in the securitization pool, including the loans' compliance with origination guidelines, the absence of delinquencies and defaults, or the absence of originator fraud.  These R&Ws

4

guaranteed these characteristics "as of" the closing and transfer dates set forth in a series of Purchase Confirmation Letters, in which Quicken sold individual batches of the mortgage loans to the Sponsor pursuant to the Purchase Agreement. Joint App'x 90, 95–112 (Purchase Agreement §§ 2.01, 2.09, 3.01–.02).

The Purchase Agreement also created a contractual remedy for any material breach of the R&Ws ("the Repurchase Protocol"). *See* Joint App'x 112–14 (Purchase Agreement § 3.03). Upon discovering any breach of the R&Ws that materially and adversely affected the value of the loan or the trust's interests, the discovering party was required to give prompt written notice to the other. Quicken had sixty days—with a possible fifteen-day extension—to cure the material breach, calculated from the earlier of discovery or receipt of notice; if the breach could not be cured within that time, Quicken had to repurchase the mortgage loan at a prescribed price.[2]

---

[2] For breaches of the transaction-level R&Ws laid out in § 3.01 of the Purchase Agreement, the Repurchase Protocol required repurchase of *all* the mortgage loans if cure was not completed within sixty days. *See* Joint App'x 113. The Purchase Agreement also included a mutual indemnification clause between the parties. *See* Joint App'x 122–23 (Purchase Agreement § 5.01). Together, the Repurchase Protocol and the indemnification provision constituted the "sole remedies" available to the Trustee for breaches of the R&Ws. Joint App'x 114.

This section of the Purchase Agreement also contained a provision imposing limits on when the counterparty may bring an action against Quicken for material breach of the R&Ws ("the Accrual Clause"). Because of the importance of this provision to the case's resolution, we include it here:

> Any cause of action against [Quicken] relating to or arising out of the Material Breach of any representations and warranties made in Sections 3.01 and 3.02 shall accrue as to any Mortgage Loan upon (i) the earlier of discovery of such breach by [Quicken] or notice thereof by the [Trustee] to [Quicken], (ii) failure by [Quicken] to cure such Material Breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon [Quicken] by the [Trustee] for compliance with this Agreement.

Joint App'x 114 (Purchase Agreement § 3.03).

On May 8, 2013, FHFA commenced an action in New York Supreme Court, New York County, "as conservator of" Freddie Mac and "on behalf of" the Trustee, by filing a summons with notice. It then served Quicken on September 4, 2013. Quicken removed the action to the United States District Court for the Southern District of New York on September 13, 2013, claiming federal jurisdiction under 28 U.S.C. § 1345.[3] Once the case was removed to federal court,

---

[3] This section provides the federal district courts with jurisdiction over "all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

however, FHFA entered no appearance and did not participate in the proceedings. Instead, the Trustee appeared and filed the instant Complaint on October 18, 2013. The Trustee's Complaint asserted federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 and made no mention of § 1345.[4]

The Complaint alleged, among other things, that two independent audits of loans in the securitization trust revealed material breaches of Quicken's R&Ws, including those related to (1) borrower income, (2) debt-to-income ratios, (3) loan-to-value and combined-loan-to-value ratios, and (4) owner occupancy. The Complaint further alleged that, upon learning of these breaches, the Trustee sent Quicken a series of letters between August 27, 2013, and October 17, 2013, that notified Quicken of the loans and breaches and demanded cure or repurchase. Finally, the Complaint alleged that Quicken failed to cure or repurchase a single breaching loan without justification.

On December 16, 2013, Quicken moved to dismiss the Complaint, arguing primarily that the breach of contract claim was time-barred. The District Court agreed, concluding that the cause of action accrued at the time the R&Ws were

---

[4] FHFA's decision to not pursue the matter further is discussed *infra* at note 8 and its accompanying text.

7

made. It further concluded that the extender provision of the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4617(b)(12), did not apply because FHFA abandoned prosecution of the action after realizing it was not the proper plaintiff. Finally, it concluded that the Trustee's remaining claim for breach of the implied covenant of good faith and fair dealing was duplicative of the contract claim and should be dismissed. The Trustee filed a timely notice of appeal.

While this appeal was pending, the New York Court of Appeals granted leave to appeal a decision of the First Department critical to the District Court's timeliness ruling below. *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 112 A.D.3d 522 (N.Y. App. Div. 2013), *leave to appeal granted by* 23 N.Y.3d 906 (2014). We then granted the Trustee's motion to adjourn oral argument until the Court of Appeals decided the case. Following release of the Court of Appeals' opinion, *see ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015), the parties submitted letter briefs under Federal Rule of Appellate Procedure 28(j), and the panel heard oral argument on October 15, 2015.

## DISCUSSION

We review *de novo* a district court's grant of a motion to dismiss, including its legal interpretation and application of a statute of limitations, s*ee City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011), and its interpretation of contractual terms, *see Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 198 (2d Cir. 2003). When sitting in diversity jurisdiction and determining New York state law claims, we must apply "the law of New York as interpreted by the New York Court of Appeals." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (per curiam).

New York's six-year limitations period on contractual claims generally runs from the time the contract was breached. *See* N.Y.C.P.L.R. §§ 203(a), 213(2); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993). Where "demand is necessary to entitle a person to commence an action," a cause of action accrues "when the right to make the demand is complete." N.Y.C.P.L.R. § 206(a).

Applying these rules, the New York Court of Appeals' recent decision is clear: A cause of action for breach of contractual representations and warranties that guarantee certain facts as of a certain date—but do not guarantee future performance—accrues on the date those representations and warranties become

9

effective. *ACE*, 25 N.Y.3d at 596. We must therefore determine whether the R&Ws before us contain any guarantee of future performance or whether the Accrual Clause constitutes a substantive condition precedent, which would delay accrual of the cause of action. *See id.* at 599.

In *ACE*, the Court concluded that the representations and warranties guaranteed only "certain facts about the loans' characteristics as of" the execution date, not how the mortgage would perform in the future. *Id.* at 595–96. Further, as an "alternative remedy" to damages, the repurchase obligation there was itself "dependent on, and indeed derivative of" the representations and thus also "could not be reasonably viewed as a distinct promise of future performance." *Ibid.* We find the R&Ws in this case indistinguishable: The plain text of the agreement "represents, warrants and covenants" that the facts stated in the R&Ws are true "as of the Closing Date and as of the Transfer Date." Joint App'x 96 (Purchase Agreement § 3.01); *see also* Joint App'x 100 (Purchase Agreement § 3.02) (substantially similar language).

The Trustee argues that, unlike those in *ACE*, the R&Ws here were expressly stated to "survive the sale of the Mortgage Loans," Joint App'x 112 (Purchase Agreement § 3.03), and therefore promise future performance. This

10

argument misses the mark. The R&Ws here guarantee, at their core, no more than the present characteristics and quality of the loans as of a specific moment in time.[5] Whether they "survive"—*i.e.*, remain valid and enforceable—does not alter the question of performance. A representation of present fact is either true or false—and the contract therefore performed or breached—if the underlying fact was true or false at the time the representation was made. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (holding, in a case alleging breach of representations under New York law, that the contract, which "promised that the site was in compliance with all environmental laws," was "breached, if at all, on the day it was executed"). Immediately upon effectiveness of the R&Ws, the Trustee was entitled to demand the contractual remedy—cure or repurchase—as to any material breach, and the cause of action therefore accrued at that time. *See* N.Y.C.P.L.R. § 206(a).

---

[5] Like the Court of Appeals, we find illustrative *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606 (1979). There, a supplier sold roofing materials to a contractor and promised to repair any leaks in the roof for twenty years. The Court of Appeals concluded that this promise was distinct and separate from the sale of materials, because it obliged the supplier to perform a continuing service—and failure to perform that service would independently breach the agreement. *Id.* at 610–12. By contrast, Quicken agreed only to remedy defects that existed in the initial sale, not to ensure the quality of the loans for their entire life. For example, the represented loan-to-value ratios express a static condition—*i.e.*, the value of the mortgaged property and its relationship to the loan amount at the time of the loan.

Next, we address the Trustee's argument, also made by the trust in *ACE*, that the Accrual Clause makes demand "a substantive condition precedent to suit that delayed accrual of the cause of action." 25 N.Y.3d at 597. We have previously observed that New York courts "distinguish between substantive demands and procedural demands." *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996). In the former case, CPLR § 206(a) does not apply and the statute of limitations "begins to run only after such demand and refusal," while in the latter, § 206(a) governs and the limitations period "begins to run when the right to make the demand is complete." *Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1161 (2d Cir. 1982) (internal quotation marks omitted).

We note the language of the Accrual Clause—that "[a]ny cause of action . . . *shall accrue*" upon (1) discovery or notice of breach, (2) failure to cure or repurchase, and (3) demand for compliance, Joint App'x 114 (Purchase Agreement § 3.03) (emphasis added)—makes an initially appealing case for inclusion as a substantive condition precedent. However, even under the obvious obligation to enforce a contract "according to the plain meaning of its terms," *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002), *ACE* requires us to examine the *object* of the demand, rather than merely apply the phrase

12

"shall accrue" as a talisman. Instead, we must ask whether demand "is a condition to a party's *performance*" (substantive) or whether it "seeks a remedy for a preexisting wrong" (procedural). *ACE*, 25 N.Y.3d at 597. The answer is fatal to the Trustee's claim.

Because the Repurchase Protocol is not an independent obligation but merely an alternative contractual remedy to damages, *see ACE*, 25 N.Y.3d at 596–97, the relevant "performance" is the truth or falsity of the R&Ws. It is clear that performance (or nonperformance) of the contract is not contingent on the Trustee's demand; the R&Ws were true or false—either performed or not—at the moment they were made, without any need for the Trustee to make a demand. *See ABB Indus. Sys.*, 120 F.3d at 360. Thus, notwithstanding the "shall accrue" language, the Trustee's demand seeks only the remedy to which it is already entitled, not performance of the underlying contractual obligation.[6] Accordingly,

---

[6] Further, construing the demand requirement as the Trustee suggests results in a circular absurdity. If the Accrual Clause were a substantive condition precedent, then the Trustee would not be entitled to its contractual remedy until the three criteria—(1) discovery or notice, (2) failure to cure or repurchase, and (3) demand—had been satisfied. However, because demand and failure to cure are now substantive elements, the Trustee would be in the odd position of having to demand a contractual remedy to which it would not be entitled until Quicken had refused its demand. Put differently, Quicken would have to choose whether to remedy a breach that had not occurred— because it had not yet refused—or to refuse and, by its refusal, breach the contract and become obligated to remedy that breach.

13

the demand is merely procedural and does not delay accrual of the cause of action. *See ACE*, 25 N.Y.3d at 597.

Our decision in *Continental Casualty* is not to the contrary. There, we concluded that, under the reinsurance contract, notice of actual losses (*i.e.,* a demand) was necessary to start the running of the statute of limitations. *Cont'l Cas.*, 77 F.3d at 21. However, payment of covered losses is *performance* of a reinsurance contract, not a remedy for breach. Thus, our precedent is consistent with *ACE*'s statement that demand as a prerequisite to performance forms a substantive condition precedent, while demand of a remedy for a preexisting breach is merely procedural. *See* 25 N.Y.3d at 597. Similarly, in the "right to final payment" cases cited by the Trustee, the payment in question was one party's performance of the contract, not a remedy for breaching it. *See Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 768–69 (2012); *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 550 (1979).

In sum, the Trustee has not persuaded us that the instant contract functions differently than that considered by the New York Court of Appeals in *ACE*, and we are thus bound to reach the same conclusion. We therefore agree with the District Court that the statute of limitations began to run on the date the

14

R&Ws became effective and were either true or false at that time. Since the Trustee's suit is therefore facially untimely,[7] the only remaining inquiry is whether HERA extends the statute of limitations for the Trustee's claim.

HERA's extender provision provides, in relevant part, that for "any action brought by [FHFA] as conservator or receiver," "the date on which the statute of limitations begins to run on any claim . . . shall be the later of—(i) the date of the appointment of [FHFA] as conservator or receiver; or (ii) the date on which the cause of action accrues." 12 U.S.C. § 4617(b)(12). The Trustee argues that this suit was commenced by—*i.e.*, "brought by"—FHFA through a summons with notice in state court. Thus, in the Trustee's view, HERA delays accrual of the cause of action until September 6, 2008, when FHFA was appointed conservator of Freddie Mac.

---

[7] The District Court concluded that the R&Ws were executed as of the date of the closing and transfer dates in the Purchase Confirmation Letters for particular groups of loans—the last of which occurred on April 2, 2007—rather than the securitization's closing date of May 8, 2007. On appeal, the Trustee has not briefed any argument to the contrary. We therefore accept the District Court's interpretation. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). As a result, the Trustee's relation-back argument is irrelevant, since the action would be untimely whether commenced on May 8, 2013, or October 18, 2013. Further, the Trustee raised its argument only in a footnote, and thus we would decline to consider it in any event. *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993).

As we have previously noted in interpreting HERA, statutory interpretation must "begin with the plain language, giving all undefined terms their ordinary meaning" while "attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 141 (2d Cir. 2013) (internal quotation marks omitted). Here, FHFA's only involvement was filing a summons with notice in state court—arguably while contractually barred from doing so by a no-action clause.[8] After removal of the action, the Trustee filed the federal complaint and prosecuted the action based on diversity jurisdiction with no apparent participation from FHFA.

In these circumstances, we conclude that the present action cannot reasonably be said to have been "brought by" FHFA. To conclude otherwise would confound common-sense notions of claims to which the statute applies and invite litigation gamesmanship by private parties seeking to obtain the

---

[8] A "no action" clause generally bars "individual [certificate] holders from bringing independent law suits which are more effectively brought by the [trustee]," unless certain exceptions are met. *Walnut Place LLC v. Countrywide Home Loans, Inc.*, No. 650497/11, Misc.3d 1207(A), 2012 WL 1138863, at *3 (N.Y. Sup. Ct. 2012) (internal quotation marks omitted), *aff'd*, 96 A.D.3d 684 (N.Y. App. Div. 2012). The no-action clause here is contained in § 12.07 of the Master Servicing and Trust Agreement. *See* Exhibit 7 to the Declaration of Howard Sidman at 90, *Fed. Hous. Fin. Agency v. Quicken Loans Inc.*, No. 13-cv-06482 (PAC) (S.D.N.Y. filed Dec. 16, 2013), ECF No. 17-7.

benefits of the extender statute for themselves. *See Johnson v. United States*, 123 F.3d 700, 703 (2d Cir. 1997) ("[T]he appropriate methodology to employ in interpreting a statute is to look to the common sense of the statute, to its purpose, [and] to the practical consequences of the suggested interpretations . . . ." (internal quotation marks omitted)).  Whether "brought by" means mere commencement or commencement and continued prosecution, *see Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013) (concluding "bring an action" is ambiguous as to commencement or prosecution of a suit, given its use in differing contexts), we need not engage in an exhaustive existential analysis to conclude the procedural posture here does not fit comfortably within a reasonable reading of the statute.  It suffices to say that HERA's extender provision does not apply to the unique circumstances before us, and the Trustee's claim remains untimely.

Finally, the Trustee argues that its claim for breach of the implied covenant of good faith and fair dealing was erroneously dismissed as duplicative.  We disagree.  Under New York law, claims are duplicative when both "arise from the same facts and seek the identical damages for each alleged breach." *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (N.Y.

17

App. Div. 2010) (citation omitted); *see also, e.g.*, *Deer Park Enters., LLC v. Ail Sys., Inc.*, 57 A.D.3d 711, 712 (N.Y. App. Div. 2008) (claims are duplicative where "the conduct and resulting injury alleged" are identical). The Trustee's argument that Quicken knowingly sold defective loans arises from the same facts and seeks the same remedy as its claim for breach of contract; its claim that Quicken hid the knowledge from it in an effort to run out the statute of limitations involves the same facts as a purported failure to notify the Trustee promptly of material defects. Thus, because the facts underlying both claims are identical and the Trustee seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative.

## CONCLUSION

In summary, the R&Ws here made no guarantees of future performance and therefore could only be breached at the time of execution. The Accrual Clause merely constitutes a procedural demand and does not delay the accrual of the cause of action. Since the extender statute does not apply, the six-year statute of limitations ran from the date the R&Ws were made. The Trustee's breach of contract claim is therefore untimely, and its second claim is duplicative. For

18

these reasons, the District Court's opinion and order of August 4, 2014, is hereby

AFFIRMED.