[36 NYS3d 135]

DEUTSCHE BANK NATIONAL TRUST COMPANY, Solely in its Capacity as Trustee of the HARBORVIEW MORTGAGE LOAN TRUST 2007-7, Appellant, v FLAGSTAR CAPITAL MARKETS CORPORATION, Defendant, and QUICKEN LOANS, INC., Respondent.

First Department, August 11, 2016

## APPEARANCES OF COUNSEL

*Lowenstein Sandler LLP*, New York City (*Zachary D. Rosenbaum, Michael J. Hampson* and *Jonathan C. Wishnia* of counsel), for appellant.

*Jones Day*, New York City (*Howard F. Sidman, Heidi A. Wendel* and *Michael O. Thayer* of counsel), for respondent.

*Jenner & Block LLP*, New York City (*Stephen L. Ascher* of counsel), for WMC Mortgage, LLC, amicus curiae.

## OPINION OF THE COURT

ACOSTA, J.

In this appeal, we must decide whether the statute of limitations bars a breach of contract action that was brought more than six years after the seller made allegedly false representations and warranties as to loans underlying residential mortgage-backed securities (RMBS). We find that dismissal of the action is mandated by the Court of Appeals' decision in *ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.* (25 NY3d 581 [2015]), which sets forth a clear rule that a breach of contract claim in an RMBS put-back action accrues on the date the allegedly false representations and warranties were made. Notwithstanding the parties' sophistication and their assent to a contract provision specifying a set of conditions that would have delayed the cause of action's accrual, we find that the accrual provision is unenforceable as against public policy, because it is tantamount to extending the statute of limitations based on an imprecise "discovery" rule, which the Court of Appeals has consistently rejected in the commercial sphere (*see id.* at 593-594). Moreover,

the accrual provision does not compel defendant to undertake a promised future performance, separate from its obligations to cure or repurchase defective loans, so as to trigger the statute of limitations anew; nor does it contemplate a substantive condition precedent to defendant's performance that would delay accrual of the breach of contract claim (*see id.* at 595, 597; *Deutsche Bank Natl. Trust Co. v Quicken Loans Inc.*, 810 F3d 861 [2d Cir 2015]). Therefore, we affirm the motion court's dismissal of the action as barred by the six-year statute of limitations applicable to breach of contract actions (CPLR 213 [2]).

Facts and Background

Defendant Quicken Loans, Inc. originated mortgage loans that were sold to nonparty purchaser/sponsor Morgan Stanley Mortgage Capital, Inc., pursuant to a second amended and restated mortgage loan purchase and warranties agreement, dated June 1, 2006. In sections 9.01 and 9.02 of the agreement, defendant, as originator and seller of the loans, made various representations and warranties to Morgan Stanley, as purchaser, concerning the characteristics, quality, and risk profile of the loans. The representations and warranties were made effective as of the date of the agreement and as of the "closing date" of each loan.[1] It is undisputed that the closing date for the sale of each package of loans occurred between December 7, 2006 and May 31, 2007.

Section 9.03 of the agreement set forth remedies for breach of representations and warranties. Upon discovery by either the seller or the purchaser of a material breach of any of the representations and warranties, the discovering party was to give the other relevant parties prompt written notice. Within 60 days of either discovery by or notice to the seller of any material breach, the seller was required to cure the breach or either repurchase the defective loan or substitute a "qualified" loan in its place (the repurchase protocol), and provide indemnification; these were to be the "sole remedies" for the breach.

Section 9.03 also included a provision that purported to delay the accrual of a breach of contract claim until three conditions were met. The accrual provision specified that any cause of ac-

---

1. The agreement defined "Closing Date" as "[t]he date or dates on which the Purchaser from time to time shall purchase, and the Seller from time to time shall sell, the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package."

tion against defendant relating to a breach of representations and warranties "shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or notice thereof by the Seller to the Purchaser, (ii) failure by the Seller to [cure, repurchase or substitute] and (iii) demand upon the Seller by the Purchaser for compliance with this Agreement."

Through various assignments, the loan pool was ultimately conveyed to the HarborView Mortgage Loan Trust 2007-7 (the trust) and securitized through the issuance of Mortgage Pass-Through Certificates, Series 2007-7, which were sold to investor certificateholders in a securitization that closed on October 2, 2007. Morgan Stanley's rights and remedies as purchaser were subsequently assigned to the trust, of which plaintiff is the trustee.

In 2013, a certificateholder, Federal Home Loan Mortgage Corporation (Freddie Mac), engaged an underwriting firm to perform a forensic review of the loans underlying some of the certificates. The review process revealed that a large number of the loans breached representations and warranties made by defendant regarding the quality and characteristics of the loans. In July 2013, Freddie Mac informed plaintiff of the breaches, and plaintiff forwarded this information to the master servicer, who notified defendant of the breaches and demanded that defendant comply with the repurchase protocol. In August 2013, Freddie Mac informed the master servicer of additional breaches, and in September the master servicer notified defendant of those breaches and demanded compliance.

On August 30, 2013, plaintiff, at the direction of Freddie Mac, commenced this action against defendant by filing a summons with notice for breach of contract in connection with defendant's breaches and failure to cure or repurchase the loans. On February 3, 2014, plaintiff filed the complaint in this action seeking specific performance, damages and/or rescission, and asserting a cause of action for breach of contract and a cause of action for breach of the implied covenant of good faith and fair dealing.

Defendant moved to dismiss the complaint based upon the statute of limitations, in addition to other grounds not relevant here. In arguing that the action was untimely, defendant contended that the loans at issue were sold to Morgan Stanley in several groups, with the closing date for the sale of each package of loans occurring between December 7, 2006 and May

31, 2007, so that all claims accrued in or before May 2007. Thus, defendant argued, the action was untimely commenced on August 30, 2013, more than six years after the accrual date.

In opposition, plaintiff did not dispute that the representations under the agreement were effective as of the closing date for the sale of the loans (i.e., May 31, 2007, at the latest), but argued that the statute of limitations had not lapsed under the agreement's accrual provision.

The motion court granted defendant's motion to dismiss, as relevant on appeal, the breach of contract claim as untimely (2015 NY Slip Op 31787[U] [Sup Ct, NY County 2015]).

Plaintiff appeals.

Discussion

"Statutes of limitation not only save litigants from defending stale claims, but also 'express[ ] a societal interest or public policy of giving repose to human affairs' " (*ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581, 593 [2015], quoting *John J. Kassner & Co. v City of New York*, 46 NY2d 544, 550 [1979]). "Because of the combined private and public interests involved, individual parties are not entirely free to waive or modify the statutory defense" (*Kassner*, 46 NY2d at 550). Although parties may agree *after* a cause of action has accrued to extend the statute of limitations, an "agreement to . . . extend the Statute of Limitations [that] is made at the inception of liability [will be] unenforceable because a party cannot 'in advance, make a valid promise that a statute founded in public policy shall be inoperative' " (*id.* at 551, quoting *Shapley v Abbott*, 42 NY 443, 452 [1870]).

In *ACE*, the Court of Appeals held that a breach of contract claim in an RMBS put-back action accrues on the date the allegedly false representations and warranties were made (25 NY3d 589). The Court stated, "Where . . . representations and warranties concern the characteristics of [the loans] as of the date they are made, they are breached, if at all, on that date" (*id.* at 589). The agreement in the instant case made defendant's representations and warranties effective on the date of the agreement (June 1, 2006), and on the closing date of the sale of the loans. It is undisputed that the closing dates of the loan sales were between December 7, 2006 and May 31, 2007. Therefore, plaintiff's causes of action for breach of contract accrued, at the latest, on May 31, 2007, and this action, com-

menced more than six years later on August 30, 2013, is barred by the statute of limitations (CPLR 213 [2]).

Plaintiff's attempt to distinguish *ACE* by the absence of an accrual provision in that case is unavailing. The accrual provision in the agreement is unenforceable, despite the principle of freedom of contract upon which plaintiff relies. To be sure, freedom of contract is fundamental in New York law, but it is not absolute, and must give way to "countervailing public policy concerns" in appropriate circumstances (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695 [1995]). New York's statutes of limitation codify the public policies of "finality, certainty and predictability that [our] contract law endorses" (*ACE*, 25 NY3d at 593). The parties' accrual provision runs afoul of these important policies.

Not only would enforcement of the accrual provision, entered into at the inception of the breach, serve to "*postpone the time from which the period of limitation is to be computed*" (*Kassner*, 46 NY2d at 551, quoting 1961 Rep of NY Law Rev Commn at 97, 98, reprinted in 1961 McKinney's Session Laws of NY at 1871), but it also would contravene the principle that "New York does not apply the 'discovery' rule to statutes of limitations in contract actions" (*ACE*, 25 NY3d at 594). The accrual provision's set of conditions creates an imprecisely ascertainable accrual date—possibly occurring decades in the future, since some of the loans extend for 30 years—which the Court of Appeals has "repeatedly rejected . . . in favor of a bright line approach" (*id.* at 593-594 [internal quotation marks omitted]).

In addition, it is noteworthy that the Second Circuit adhered to *ACE* in a matter involving an accrual provision that is materially identical to the one at issue here, although it did so without voiding the provision on public policy grounds. In *Deutsche Bank Natl. Trust Co. v Quicken Loans Inc.* (810 F3d 861, 863 [2d Cir 2015]), the Second Circuit held, inter alia, that the statute of limitations ran from the date the representations and warranties were made and thus barred the trustee's action, notwithstanding the presence of an accrual provision. Assuming arguendo that the accrual provision is not unenforceable as a matter of public policy, we are persuaded by the Second Circuit's reasoning in *Deutsche Bank*, and similarly apply *ACE* here.

Plaintiff's untimely action cannot be saved by construing the accrual provision as a promise of future performance by de-

fendant. The *ACE* Court noted that "[a]lthough parties may contractually agree to undertake a separate obligation, the breach of which does not arise until some future date, the repurchase obligation undertaken by [the seller in that case] d[id] not fit this description" (*id.* at 594). As an example of a contract to undertake a separate obligation, the *ACE* Court discussed *Bulova Watch Co. v Celotex Corp.* (46 NY2d 606 [1979]), in which a contract for the sale of a roof contained a separate clause guaranteeing that the seller would make repairs at its own expense (*ACE*, 25 NY3d at 595). The *Bulova Watch* Court held that the repair clause was a separate obligation "from the contract to supply roofing materials, the breach of which triggered the statute of limitations anew" (*id.* [internal quotation marks omitted]). Unlike the guarantee of future performance in *Bulova Watch*, the defendant's cure-or-repurchase obligation in *ACE* "could not reasonably be viewed as a distinct promise of future performance," because "[i]t was dependent on, and indeed derivative of, [the] representations and warranties" underlying the loans (*id.*). So too here.

Plaintiff argues that defendant promised future performance because the agreement states that the representations and warranties are to survive the sale of the loans. The Second Circuit's decision in *Deutsche Bank* explains why "[t]his argument misses the mark" (810 F3d at 866). The representations and warranties made by defendant

> "guarantee, at their core, no more than the present characteristics and quality of the loans as of a specific moment in time. Whether they 'survive'— *i.e.,* remain valid and enforceable—does not alter the question of performance. A representation of present fact is either true or false—and the contract therefore performed or breached—if the underlying fact was true or false at the time the representation was made" (*id.* [footnote omitted]).

Thus, plaintiff "was entitled to demand [its] contractual remedy" at the moment the representations became effective, "and the cause of action therefore accrued at that time" (*id.*). As the agreement did not call for future performance of a separate obligation by defendant, this action cannot be deemed timely on that basis.

Similarly, the accrual provision's requirement that plaintiff make a demand on defendant for performance of the agreement does not constitute a substantive condition precedent

that could delay accrual of the breach of contract claim. As in *ACE*, plaintiff overlooks the significant distinction between substantive and procedural demand requirements (*see* 25 NY3d at 597). A demand "that is a condition to a party's *performance*" is a substantive condition precedent, which can delay accrual of a claim, whereas "a demand that seeks a remedy for a preexisting wrong" is a procedural prerequisite to suit, which cannot (*see id.*; *Deutsche Bank*, 810 F3d at 867). Because plaintiff "suffered a legal wrong at the moment [defendant] allegedly breached the representations and warranties[,] . . . a cause of action existed for breach of a representation and warranty" at that time (*ACE*, 25 NY3d at 597-598). Plaintiff was merely "limited in its remedies for that breach" (*id.* at 598), and could only have pursued its "sole remedies" under the repurchase protocol. "Hence, the condition [that plaintiff demand defendant's compliance with the agreement] was a procedural prerequisite to suit," not a substantive condition precedent to defendant's performance (*id.* at 598; *see also Deutsche Bank*, 810 F3d at 867).

Finally, we reject plaintiff's argument that even if the motion court correctly deemed the accrual provision unenforceable, it erred in holding that all of the breach of contract claims were time-barred. Plaintiff contends that at least one of the representations was allegedly breached by defendant as late as October 2, 2007 (the closing date of the securitization, when the loans and rights under the purchase agreement were assigned to the trust), rendering timely the claim asserted in the complaint filed on August 30, 2013. The complaint alleges that in connection with the securitization, defendant made certain representations in addition to those made in the agreement, and cites section 9.01 (m)[2] of the agreement as one of the representations and warranties defendant made in connection with the loans that implicated the repurchase protocol *as well as* the securitization transaction. However, the complaint's allegations all relate to the representations and warranties made about the loans in the agreement in 2006 and the closing dates

---

**2.** Section 9.01 (m) states in pertinent part that "[t]o the Seller's knowledge, neither this Agreement nor any information . . . furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby (including any Securitization Transaction . . .) contains or will contain any untrue statement of fact or omits or will omit to state a fact necessary to make the statements contained herein or therein not misleading."

of the loan sales, the last of which occurred in May 2007.[3] They do not address any other allegedly false statement or information furnished by defendant on October 2, 2007 in connection with the securitization. Therefore, all of plaintiff's claims accrued no later than May 31, 2007, and were not timely asserted when plaintiff commenced this action more than six years later.

Conclusion

Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered April 14, 2015, which, insofar as appealed from as limited by the briefs, granted defendant Quicken Loans, Inc.'s motion to dismiss the breach of contract claim as time-barred, should be affirmed, with costs.

RENWICK, SAXE, RICHTER and GISCHE, JJ., concur.

Order, Supreme Court, New York County, entered April 14, 2015, affirmed, with costs.

———————

Motion for leave to file amicus curiae brief granted.

———————

3. Even section 9.01 (m) appears under the broader provision of section 9.01, stating that defendant's representations and warranties were made "as of the date hereof [June 1, 2006] and as of each Closing Date [which was defined as the date of sale of the loans, the latest of which was on May 31, 2007]."