17-3865 (L)
421-A Tenants Ass'n, Inc., et al., v. 125 Court Street, LLC, et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of January, two thousand nineteen.

PRESENT:   RALPH K. WINTER,
           JOHN M. WALKER, JR.,
           CHRISTOPHER F. DRONEY,
                *Circuit Judges.*

───────────────────────────────────────────

421-A TENANTS ASSOCIATION, INC., VINETTA
SCRIVO, RICHARD LEBED, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED,

                *Plaintiffs-Appellants,*

        v.                                          17-3865-cv, 17-3964-cv

125 COURT STREET LLC, TWO TREES
MANAGEMENT CO. LLC, 30 MAIN LLC, DW
ASSOCIATES LP, DAVID C. WALENTAS, JED D.
WALENTAS, 194 ATLANTIC LLC,

                *Defendants-Appellees.*

───────────────────────────────────────────

FOR PLAINTIFFS-APPELLANTS:        MATTHEW L. BERMAN (Robert J. Valli, Jr. *on the brief*), Valli Kane & Vagnini LLP, Garden City, NY.

FOR DEFENDANTS-APPELLEES:        PAUL L. SHECHTMAN (Rita K. Maxwell, *on the brief*), Bracewell LLP, New York, NY.

Appeal from a November 3, 2017 judgment dismissing the complaint and a December 7, 2017 denial of a motion for leave to amend the complaint of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants 421-A Tenants Association, Inc., Vinetta Scrivo, and Richard Lebed ("the tenants") appeal from the district court's decision dismissing their class action complaint for failure to state a claim and for untimeliness, and from a denial of a motion for leave to amend. On appeal, they contend that their claims were timely and that the district court abused its discretion by denying leave to amend their complaint. We assume the parties' familiarity with the facts and record of prior proceedings, which we briefly summarize as necessary to explain our decision. We then turn to the merits of this appeal, first addressing the timeliness of the suit, and second, the denial of leave to amend the complaint.

## I.    The Tenants' Allegations and Procedural History

In the complaint, the tenants allege a broad scheme to defraud the State of New York, New York City, and a proposed tenant class by overcharging tenants on their rent at two different housing developments subject to New York City's rent stabilization scheme.[1] According to the tenants, defendants David Walentas and Jed Walentas, who are New York real estate developers, and some of the business organizations that they control, perpetrated this scheme in order to "unlawfully deregulate apartments" subject to rent stabilization while still "collect[ing] tax breaks under Section 421-a of the Real Property Tax Law of the State of New York." App. 87. Under section 421-a, New York allows real estate developers to receive certain tax benefits on properties when the developers agree to make the property subject to the New York City Rent Stabilization Law. *See* N.Y. Real Prop. Tax Law § 421-a. A landlord's property that is subject to the Rent Stabilization Law must comply with several restrictions on rent increases and respect certain tenant protections.

---

[1] The plaintiffs initiated this lawsuit on January 31, 2017, and filed a first amended complaint on April 20, 2017. All references in this summary order are to the first amended complaint, which was the operative complaint at the time the district court entered judgment.

2

According to the tenants, a landlord whose property is subject to the Rent Stabilization Law must inform the City and the tenant at that property of a unit's "initial legal regulated rent." App. 94. The "initial legal rent" is the lower of "(i) the initial 'legal rent' established by the New York City Department of Housing Preservation and Development . . . or (ii) the actual rent paid by the initial tenant." App. 96. The Rent Stabilization law protects tenants paying those controlled rates in part by guaranteeing that they receive a renewal lease each time their lease expires. At the time of such renewal, a landlord may only increase the rent in "modest" amounts as "permitted . . . by the [City's] Rent Guidelines Board." App. 98. The law also permits strictly regulated rent increases for certain improvements to a tenant's apartment or building. Finally, certain reporting requirements apply to the rent amounts. For example, each year the landlord must inform the state's Division of Housing and Community Renewal ("DHCR") of the "legal rent for each regulated apartment" and "must provide tenants with a copy of their respective apartment's registration form." App. 94–95, 96.

The tenants contend that the Walentas developers and some of the companies that they control (the "Walentas Enterprise") attempted to evade the restrictions of the Rent Stabilization Law while still receiving tax exemptions through a variety of fraudulent acts. The allegations concern two apartment complexes located in Brooklyn: 125 Court Street and Cobble Hills Mews.[2] The tenants allege that in the initial application for section 421-a tax exemptions for the 125 Court Street property, the Walentas Enterprise made many fraudulent statements to New York City's Department of Housing Preservation and Development ("HPD"). The HPD "determines both eligibility for Section 421-a real property tax exemptions and the initial rents in the subject property." App. 108. Following HPD's approval of the initial rent amounts, the Enterprise allegedly registered the apartments at 125 Court Street with the DHCR "at rents that were far in excess of the lower of: (i) the legal regulated rent (as approved by HPD), or (ii) the actual rent paid by the initial tenants," and falsely listed many of the units at the property as "'exempt' from rent stabilization." App. 114. The Walentas Enterprise sent the same misleading registrations to tenants occupying units in the building.

The tenants further allege that the Walentas Enterprise then compounded that fraud by using the illegally-inflated initial rent amount to calculate rent increases each time a tenant renewed their lease. The initial rent amount is relevant because the Rental Guidelines Board allows landlords to increase rents by a percentage of the prior year's permitted rent amount. The tenants contend that the Walentas Enterprise used the inflated rent amounts to extract higher-than-permissible rents over nearly a decade of operating 125

---

[2] Most of the allegations discussed here center on the 125 Court Street property, and not the Cobble Hill Mews property.

Court Street. As part of this alleged ongoing fraud, the Enterprise submitted false rent registration reports to DHCR and to the tenants at 125 Court Street. The complaint also alleges that the rent increases "coerced [tenants] into moving out of their apartments," which allowed the Walentas Enterprise to apply further increases to the rent amount because of the tenant vacancy. App. 126. Similarly, the Walentas Enterprise allegedly used unlawful evictions to remove individuals from their apartments in order to create vacancies that would permit rent increases. Finally, the tenants allege that a similar scheme occurred at the Enterprises' Cobble Hill Mews property, although they provide significantly less detailed factual allegations for that property.[3]

The tenants initiated this lawsuit in early 2017, alleging civil Racketeering Influenced and Corrupt Organizations (RICO) claims, as well as a pendent state law contract reformation claim. After filing an amended complaint, the Walentas realtors and the defendant business organizations moved to dismiss, primarily on the grounds that the complaint (1) lacked specificity as to the Cobble Hill Mews property, and (2) was untimely. As to the timeliness ground, defendants pointed to a New York state court lawsuit alleging similar violations at the 125 Court Street building against the same defendants, as well as some news articles covering that lawsuit, to argue that the defendants were put on inquiry notice of the alleged scheme in 2012. The district court agreed and dismissed the complaint for failing to state a claim regarding the Cobble Hill Mews property, and on timeliness grounds as to the claims regarding the 125 Court Street property. The tenants appealed. On appeal, they argue that the district court erred in its analysis of whether their lawsuit was timely, and that the district court erred by denying leave to amend the complaint. We address each of those issues in turn.

## II.    Timeliness

Civil RICO claims have a four-year statute of limitations. *Agency Holding Corp v. Malley-Duff & Assocs. Inc.*, 483 U.S. 143, 156 (1987). The district court reasoned that the 2012 state lawsuit alleging similar claims as those in this case put the tenants on inquiry notice in 2012, and that as a result, their 2017 lawsuit over four years later was untimely. The district court also rejected the tenants' arguments that each new lease was a "new and independent injury" that makes some injuries timely and that equitable tolling should apply. We review those decisions regarding the statute of limitations *de novo. See Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015).

---

[3] The tenants have not challenged the district court's ruling dismissing the Cobble Hill Mews property claims.

We agree with the district court that the 2012 state court lawsuit put the tenants on inquiry notice of their civil RICO claims. "The limitations [for civil RICO claims] begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998). A plaintiff "should have discovered" a potential claim and is therefore on "inquiry notice" where "a reasonable [person] of ordinary intelligence would have discovered the existence of the fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). Here, the reasonable tenant would have been on inquiry notice about the suspected fraud at 125 Court Street beginning in May 2012. The prior month, ten tenants from that apartment building filed a lawsuit alleging remarkably similar fraud to the fraud alleged in this case. For example, the lawsuit alleged that 125 Court Street LLC had "wrongfully provided leases and renewal leases . . . establishing an illegal rent" and that tenants had "been denied the right to rent increases limited to the amounts provided under the [Rent Stabilization Law]." App. 191. Moreover, the lawsuit alleged that 125 Court Street LLC unlawfully inflated rents through "deceptive and fraudulent itemization of charges and filings with [DHCR]." App. 194. Thus, the 2012 state lawsuit—which was brought against one of the same defendants as in this case—was in sum and substance similar to the claims brought in this lawsuit.

Other attention to the alleged fraud at 125 Court Street further put the tenants on inquiry notice by May 2012. After the state court plaintiffs initiated their lawsuit, news articles regarding the lawsuit appeared in local media during May 2012, including the *Brooklyn Daily Eagle* (a local daily newspaper), *Curbed* (a trade publication for realtors), and *Brownstowner* (a Brooklyn real estate news and listings website).[4] The combination of that local news coverage and the strikingly similar lawsuit leave little doubt that the tenants here were on notice of the alleged fraud at 125 Court Street beginning in May 2012.

In support of their timeliness argument, the tenants point to our decision in *Staehr v. Hartford Financial Services Group*, 547 F.3d 406 (2d Cir. 2008). In that case, we concluded that the plaintiffs were not on inquiry notice regarding the defendant's alleged securities violations. 547 F.3d at 424–36. The *Staehr* court reached that conclusion despite news articles and other lawsuits alleging violations of securities laws similar to those alleged in the complaint in that case. *See id.* The defendants argued that those news articles and other lawsuits had put the plaintiffs on inquiry notice about the alleged fraud at the defendant insurance company. However, we rejected that argument, noting (1) that the other lawsuits did not involve the defendant insurance company, (2) that one lawsuit that

---

[4] The district court took judicial notice of the news articles in its decision on the tenants' motion for reconsideration. Although the tenants challenge the weight we can place on these articles, we have previously made clear that it is appropriate to take news articles into account even on a Rule 12(b)(6) motion. *See Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 427–33 (2d Cir. 2008).

involved a subsidiary of the defendant received no press coverage, and (3) that much of the press coverage occurred in trade publications that were unlikely to put a reasonable investor on notice. *Id.* at 427–36. Finally, we observed that a sophisticated insurance lawyer was the plaintiff in the prior lawsuit against a subsidiary of the defendant insurance company and was therefore not representative of "an investor of ordinary intelligence." *Id.* at 436. This case is distinguishable for obvious reasons: here, residential tenants sued the exact same defendant over the same building regarding similar allegations of fraud. *See LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003) (relying in part on lawsuit against the same defendant for alleged fraud to conclude that plaintiffs were on inquiry notice). As a result, the tenants were on inquiry notice by May of 2012.

For similar reasons, we conclude that the district court correctly refused to equitably toll the statute of limitations. The tenants' failure to prosecute their lawsuit once on inquiry notice forecloses their argument that they acted with "reasonable diligence," a prerequisite for equitable tolling. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 157 (2d Cir. 2012).

Finally, we agree with the district court that the tenants cannot avoid the statute of limitations by characterizing each new lease as a new and independent injury. As we explained in *Bingham v. Zolt*, a plaintiff may bring a civil RICO claim for any "separate and independent injuries . . . discoverable within the four-year 'window' before suit was filed," even if the underlying RICO violations fall outside of the statute of limitations. 66 F.3d 553, 560 (2d Cir. 1995); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988) (stating that a plaintiff has a "right to sue" when a "new and independent injury is incurred from the same [RICO] violation"). In this case, the tenants allege that they were injured by the renewal leases because the renewal leases used the illegally-inflated initial rent amount to calculate rent increases. Although each renewal lease therefore leads to a new injury, that injury is not independent of the alleged underlying RICO violation because it is caused in material part by the alleged fraud committed in connection with the first lease.

Our ruling applies to both the individual tenants and 421-A Tenants Association. The Association seeks only to represent tenants via associational standing, and as a result, cannot assert claims that the tenants themselves may not assert. *See Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In addition, to the extent that the Association seeks to advance a claim based on new leases (as opposed to renewal leases) signed within the last four years, it does not have associational standing to do so because both the claim asserted and the relief requested "require[] the participation of individual members [of the association] in the lawsuit." *Id.* In this case, because the Association includes members who signed leases at different times and with different rent amounts, "'the damage claims

6

[of the members] are not common to the entire membership, nor shared by all in equal degree,' so that 'both the fact and extent of injury would require individualized proof.'" *Sun City Taxpayers' Ass'n v. Citizens Utilities Co.*, 45 F.3d 58, 61 (2d Cir. 1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975))."

## III.        Denial of Leave to Amend the Complaint

The tenants also appeal the district court's decision to deny their motion to reconsider and the request therein to amend the complaint to address the district court's timeliness ruling. "We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

The tenants contend that the district court abused its discretion by not providing leave to amend after issuing its decision on the motion to dismiss. The tenants are correct that, in general, a plaintiff "will not see the necessity of amendment" where the plaintiff lacks "the benefit of a ruling" from the court. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Under such circumstances, it is often improper to deny leave to amend. *See Loreley*, 797 F.3d at 190–91; *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (summary order) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously.").

Here, however, the district court denied leave to amend on the ground that doing so would be futile. Futility remains a "ground[] on which denial of leave to amend has long been held proper." *Loreley*, 797 F.3d at 190. Although the district court did not explain that decision, we find no error. The tenants propose amending their complaint to demonstrate that the documents underlying the state court lawsuit and this case were not in the public record and that the defendant in the state court action misrepresented certain facts to that court. The tenants miss the point: as we explained above, the lawsuit *itself* and the accompanying press coverage put the tenants on inquiry notice of their claims. As a result, any amendment to the complaint cannot fix the statute of limitations problem that the tenants face. Accordingly, we affirm the denial of leave to amend the complaint as to the statute of limitations issues.

For the reasons stated above, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court