[45 NYS3d 11]

U.S. Bank National Association, as Trustee of the J.P. Morgan Alternative Loan Trust 2007-A2, Appellant-Respondent, v GreenPoint Mortgage Funding, Inc., Respondent-Appellant.

First Department, December 29, 2016

## APPEARANCES OF COUNSEL

*Holwell Shuster & Goldberg LLP*, New York City (*Michael S. Shuster, Dwight A. Healy, Brendon DeMay* and *Adam T. Kirgis* of counsel), for appellant-respondent.

*Murphy & McGonigle, P.C.*, New York City (*Theodore R. Snyder* and *James A. Murphy* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

Gische J.

This is a "put-back" action, involving residential mortgage backed securities (RMBS). Plaintiff U.S. Bank National Association, the trustee of the securitization trust, claims that a large number of the mortgages, originated by defendant, GreenPoint Mortgage Funding, Inc., and held by the trust, breached the representations and warranties that GreenPoint made regarding their quality. Although under the governing agreements GreenPoint was obligated to cure any nonconforming mortgage within 60 days of either discovering or being notified of a breach, the trustee claims that GreenPoint failed to cure by either replacing or repurchasing the nonconforming mortgages.

The issues before us are related to the contractual requirement and sufficiency of notices of breach (breach notice). We consider whether a breach notice is required when the underlying contract claim is based upon a defendant's independent discovery or knowledge of the nonconforming mortgages. We also consider whether an otherwise late breach notice can relate back in time to the commencement of the underlying action in order to avoid dismissal. For the reasons that follow, we hold that the breach of contract claims based upon defendant's alleged independent discovery or likely knowledge of nonconforming mortgage loans do not require breach notices to be sent before an action may be brought. We further hold that the doctrine of relation back does not save claims that do require that a breach notice be sent as a precondition to bringing an action.

GreenPoint originated 418 mortgage loans that were sold to a nonparty sponsor pursuant to a mortgage loan sale agreement (MLSA) dated August 1, 2005. The MLSA included various representations and warranties concerning the characteristics, quality and risk profile of the mortgage loans. Those and other loans were pooled together and conveyed to the J.P. Morgan Alternative Loan Trust (JPMALT) for securitization through the issuance of RMBS certificates. The securitization closed on May 31, 2007, and plaintiff is JPMALT's trustee. The representations and warranties in the MLSA were incorporated and reconstituted in a separate agreement, also dated May 31, 2007, made for the benefit of the trustee (and others).

Plaintiff contends that most of the loans owned by the trust, which originated with GreenPoint, breached the representa-

tions, warranties and other covenants set forth in MLSA §§ 7.01 and 7.02. The representations include statements that none of the loans are in default, that the mortgaged property is lawfully occupied, and that no mortgage loan has been more than 30 days delinquent since origination (MLSA § 7.01). MLSA § 7.02 (1) also states, in sum and substance, that the MLSA contains no untrue statements or omissions of material fact.

MLSA § 7.03 sets forth the rights and remedies of the parties (repurchase protocol) in the event nonconforming, breaching loans are either discovered by GreenPoint, or nonparty Wells Fargo, as the servicer and securities administrator, notifies GreenPoint of the nonconforming mortgage. It provides that

> "[u]pon discovery by the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans[,] . . . the party discovering such breach shall give prompt written notice to the others.

> "Within sixty (60) days of the earlier of either discovery by or notice to either the Seller or the Servicer (such period, the "Cure Period") of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser therein, the Seller or the Servicer, as the case may be, shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price."

The repurchase protocol states further that GreenPoint's obligation to cure, repurchase or provide a substitute for a defective mortgage loan and/or to indemnify the purchaser "constitute the sole remedies of the Purchaser respecting a breach of the representations and warranties set forth in Subsections 7.01 and 7.02."

By letter dated May 29, 2013, the Federal Home Loan Mortgage Corp. (Freddie Mac), an investor and certificate holder, notified plaintiff that its independent loan-level forensic review had revealed pervasive breaches of GreenPoint's representations and warranties. On May 31, 2013, plaintiff commenced this action by filing a summons with notice. The filing

was effectuated exactly six years after May 31, 2007, the closing date of the underlying transaction in which the representations and warranties were made.

Prior to the commencement of the action, GreenPoint was not notified that any of the loans it had originated were in breach of its representations and warranties; nor was any demand made for GreenPoint to cure or repurchase any of the mortgages. The summons with notice refers to a breach of contract claim solely predicated on defendant's knowing about the nonconforming mortgages at closing. It states in relevant part:

> "On information and belief, Defendant was aware from the Closing Date that the mortgage loans that were sold to the Trust were in breach of the R&W [representations and warranties]. Defendant is in breach of its obligations under the applicable agreements to cure breaches of the R&Ws or repurchase breaching mortgage loans within the contractually specified time periods. Defendant has failed to cure or repurchase any of its mortgage loans in breach of the R&Ws as required by the Repurchase Obligation."

Only after this action was commenced were three breach notices then sent to GreenPoint. The first notice, dated June 13, 2013, identified 85 defective loans, the second notice, dated August 30, 2013, identified another 98 loans, and the third, dated November 4, 2013, identified yet an additional 17 loans that breached GreenPoint's representations and warranties. By the time these breach notices were sent, the applicable statute of limitations had expired. None of the breach notices provided for a 60-day cure period, as the MLSA allows, and the November 4, 2013 breach notice was sent only two days before the complaint was filed.

On November 6, 2013, more than six months after the action was commenced, plaintiff filed its complaint. The complaint contains a breach of contract cause of action, based, in part, upon the following allegations:

> "5. GreenPoint . . . was in a unique position to know and, based on the nature of the breaches that have been identified to date, as well as the nature of the loan review undertaken by GreenPoint in originating the Mortgage Loans, upon information

and belief likely did know, about the defective nature of the Mortgage Loans long before the Trustee did. It is unlikely that GreenPoint, in performing the procedures it averred it undertook, could have generated such a high percentage of breaching Mortgage Loans without knowing it was doing so. Rather, it is likely that GreenPoint did discover the breaches, or was willfully blind or grossly negligent in not discovering them, long before the Certificateholder and the Trustee did so.

"6. Given GreenPoint's likely knowledge of breaches of representations and warranties, it breached its contractual obligations to provide notice to the Trustee of the breaches and, based on its own discovery of the breaches (and prior to notice thereof from the Securities Administrator), to cure the breaches or repurchase the affected Mortgage Loans. Rather, GreenPoint willfully has remained silent and has failed to cure or repurchase, repudiating its contractual obligations.

"7. When the Trustee, which is not obligated under the parties' agreements to investigate GreenPoint's compliance with its representations and warranties or to inspect loan files, learned of the breaches, it notified the Securities Administrator, which provided prompt notice thereof to GreenPoint and demanded that GreenPoint cure the breaches or repurchase the loans at issue. GreenPoint has not repurchased a single Mortgage Loan in response to these demands and, with respect to the contracts at issue here and elsewhere, has repudiated its repurchase obligations. The Trustee at the direction of the Certificateholder now sues, seeking specific performance, damages, and rescission, and to the extent rescission is impracticable, . . . rescissory damages in lieu of rescission."

The complaint includes the breach of contract claim, as originally asserted in the summons with notice, that Green-Point was in a unique position to know and likely knew of the defective nature of the loans but failed to take curative measures. The complaint also includes new allegations, that GreenPoint had been given notice of the nonconforming loans, but had failed to cure by replacing or repurchasing them.

Under MLSA § 7.03, GreenPoint's obligation to cure a nonconforming loan is triggered in one of two ways. One way is if GreenPoint discovers on its own that a loan it sold breached the representations and warranties contained in the governing documents. The other way is if it is notified by the servicer of a nonconforming loan. We have recognized that these alternative contractual obligations give rise to independent, separate claims for breach of contract (*Morgan Stanley Mtge. Loan Trust 2006-13ARX v Morgan Stanley Mtge. Capital Holdings LLC*, 143 AD3d 1, 4 [1st Dept 2016]; *Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.*, 133 AD3d 96, 108 [1st Dept 2015]). In either case, GreenPoint is contractually entitled to a 60-day period in which to cure its default, presumably so litigation can be avoided. GreenPoint may replace the defective loan with a compliant one, but if it does not replace the loan within the 60-day cure period, then, under the repurchase protocol, GreenPoint must repurchase the defective loan.

Regardless of when GreenPoint discovers a breach or is notified of the nonconforming mortgage, the breach of contract cause of action accrues on the date of the closing of the underlying transaction, which is when the representations and warranties were made (*ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, 25 NY3d 581 [2015]). This action was timely brought within six years after the date of closing.

Central to this appeal is whether the notice provision in the repurchase protocol applies to contract claims where a defendant itself knows about the nonconforming mortgages. In other words, is a breach notice still required when the contract claim is predicated on nonconforming mortgages that defendant itself discovered? Relying on the terms of the MLSA repurchase protocol, we find that it would have been wholly illogical for plaintiff to be required to notify GreenPoint about the existence of nonconforming mortgages that GreenPoint already knew about or would have discovered through its own due diligence. For these claims, no precommencement breach notice was necessary. The terms of the repurchase protocol provide that the cure period is triggered upon "discovery by or notice to [GreenPoint]." Thus, this action, to the extent it alleges that GreenPoint's obligation to cure was triggered by its own discovery of nonconforming mortgages, but no cure was effected, is not only timely, but it also may proceed regardless of the validity of the late breach notices.

We also find that the allegation that defendant breached the repurchase protocol under the contract, because it knew or should have known that the loans were in breach of the warranties and representations, is sufficient to withstand a motion to dismiss. Plaintiff claims that as the originator of the mortgage loans, GreenPoint created and had full access to the loan files and either could or did perform pre- and post-closing due diligence.

The second prong of plaintiff's contract cause of action is separately based on allegations that GreenPoint was notified of the breaching mortgages, but failed to cure. The breach notices underpinning this separate notice-based claim were sent only after plaintiff had commenced this action by filing its summons with notice. The breach notices did not afford GreenPoint its contractual opportunity to cure its default and thereby avoid this lawsuit, let alone trigger its obligation to repurchase them. We find that the breach notices had to be sent so as to permit GreenPoint its allotted time to cure any claimed breach. The breach notices were a contracted-for condition precedent to bringing this action. The doctrine of relation back cannot render these otherwise untimely breach notices timely.

Our conclusion that a breach notice is a condition precedent to a claim predicated on actual notice of default is mandated by the language of the repurchase protocol in the MLSA and the Court of Appeals decision in *ACE* (25 NY3d 581). In *ACE*, the Court determined that a contract requiring a breach notice triggering an opportunity to cure/repurchase is a condition precedent to bringing a contract claim for breach of representations and warranties. *ACE* was an RMBS put-back action involving contracts substantially similar to those at bar. The dispute in *ACE* largely centered on when the contractual cause of action accrued for statute of limitations purposes. In finding that the cause of action accrued when the nonconforming representations were made, the Court of Appeals distinguished between procedural prerequisites, which seek a remedy for a preexisting wrong, and substantive prerequisites, which are conditions to performance. The Court of Appeals held that the breach notice and cure period required in *ACE*, which is substantially identical to the breach notice and cure period required here, was a procedural prerequisite to suit. Thus, in *ACE* the Court of Appeals affirmed dismissal of the complaint, stating that, "because the Trust admittedly failed to fulfill the condition precedent, we need not and do not address the issues

of standing and relation back disputed by the parties" (25 NY3d at 599).

To the extent plaintiff has asserted claims that rely upon GreenPoint's notification by the servicer of nonconforming mortgages, those claims were correctly dismissed because the breach notices were sent too late. Where, as here, a contract specifies a cure period, any claim premised on the failure to effect a cure is premature if it is brought before the expiration of the cure period (*Chumley's Bar & Rest. Corp. v Bedford Ct. Assoc.*, 174 AD2d 398 [1st Dept 1991]). Because the breach notices were sent only after the summons with notice was filed, the cure period had not begun, let alone expired, when this action was commenced (*see Southern Wine & Spirits of Am., Inc. v Impact Envtl. Eng'g, PLLC*, 80 AD3d 505 [1st Dept 2011], citing *Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp.*, 208 AD2d 63 [1995], *affd* 87 NY2d 927 [1996], and *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 690-692 [1995]). These claims are, therefore, premature.

We reject plaintiff's argument that, because the summons with notice put defendants on notice of nonconforming mortgages, the late breach notices, although sent after the summons with notice was filed but before the filing of the complaint, "relate back" to the commencement of this action. Leaving aside the question of whether the notice served with the summons actually did provide notice of a claim for failure to cure and repurchase after notice,* the breach notice cannot "relate back" because the inherent nature of a condition precedent to bringing suit is that it actually precedes the action. Plaintiff had no right to bring the action unless and until this condition was fulfilled. Even were we persuaded that the belated breach notices in this case could relate back, the earliest date would be when the summons with notice was served. That date would still not suffice because, contractually, defendant must be afforded a 60-day period within which to cure before an action for breach of contract may be commenced.

---

* The notice served with the summons stated that plaintiff intends to proceed against defendant with a claim that it was "aware from the Closing Date that the mortgage loans that [defendant] sold to the Trust were in breach of the [representations and warranties]" because "such breaches pervade the entire pool of loans." This summons with notice unmistakably apprised defendant that plaintiff intended to proceed against it on the basis of defendant's own awareness or discovery of the nonconforming mortgages. There is no language in this notice, however, demanding that defendant fulfill its obligations/right to cure before the commencement of an action.

Plaintiff's argument would simply eviscerate the condition precedent of serving a breach notice, as required by the contract, and defendant's right to effect a pre-action cure.

Moreover, the notice that accompanies a summons when no complaint is filed at the commencement of an action fulfills a very different purpose than the breach notice required pursuant to the parties' agreements. A notice that accompanies a summons is simply to let a defendant know the claims being asserted (*see Pilla v La Flor De Mayo Express*, 191 AD2d 224 [1st Dept 1993]). The contractual requirement of a breach notice, however, triggers the defendant's right/obligation to cure a claimed default and avoid a lawsuit. The concept of relation back in a pleading context concerns the adequacy of the notice given and is dependant upon the existence of a valid preexisting action (CPLR 203 [f]; *Carrick v Central Gen. Hosp.*, 51 NY2d 242, 248 [1980]). A condition precedent, however, is a contractual obligation (*see MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009]; *A.H.A. Gen. Constr. v New York City Hous. Auth.*, 92 NY2d 20, 31 [1998]; *Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 690 [1995]). Consequently, a pleading notice and a breach notice are not natural substitutes for one another.

*Nomura* (133 AD3d 96), relied upon by the dissent to support the application of relation back, is factually distinguishable. It involved several lawsuits by trustees against the same defendant. With respect to the relation back issue, the most important factual distinction between this case and *Nomura* is that the trustees actually sent presuit breach notices to the defendant in that case. Although the breach notices identified some, but not all, of the nonconforming mortgages for which the trustees ultimately sought relief, they expressly stated that the trustees were still investigating the matter and that further nonconforming mortgages might be discovered. To the extent the *Nomura* Court allowed the claims to proceed based upon defendant's independent knowledge of the nonconforming mortgages, we rule consistently. As for the relation back concept adopted in *Nomura*, the critical distinction is that the trustees in that case complied with the condition precedent of providing that defendant with notice of its default. Here, no such precommencement breach notice was ever sent to GreenPoint, so its obligation to cure (repurchase) or otherwise respond was not triggered; the breach notices were only sent after the action was commenced. Furthermore, although the precommence-

ment breach notices in *Nomura* did not specifically identify every alleged nonconforming mortgage, the trustees' presuit demands put the defendant on notice that the certificate holders whom the plaintiffs (as trustees) represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made (133 AD3d at 108). This did not occur here, and we do not believe *Nomura* should be extended to cover the claims at bar.

Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered March 4, 2015, which, insofar as appealed from as limited by the briefs, granted defendant's motion to dismiss the breach of contract claim to the extent the claim is based upon cure demands made on defendant, and denied the motion to dismiss, that claim to the extent it is based upon allegations of defendant's independent discovery of breaches should be affirmed, with costs.

ACOSTA, J.P. (dissenting in part). While I agree that plaintiff timely commenced this put-back action based on allegations that defendant was aware of or discovered defects in the pool of loans, I respectfully disagree with the majority's holding that plaintiff's subsequent claims, based on postcommencement notices to defendant of defective loans, cannot relate back to the timely summons with notice. In my view, because that original pleading gave defendant notice of the transaction or occurrence to be proved—namely, the sale of a pool of loans—the claims later interposed in the complaint relate back to the timely commencement of the action, pursuant to CPLR 203 (f) and this Court's decision in *Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc.* (133 AD3d 96 [1st Dept 2015]).

The majority holds that plaintiff's failure to fulfill a procedural prerequisite to suit (providing defendant with notice of the breaches and awaiting the expiration of a 60-day cure period before commencing this action) renders the relation-back doctrine inapplicable.[1] However, it supports this proposi-

---

1. Defendant primarily argues that the action is untimely because plaintiff failed to comply with the procedural condition precedent of making a demand prior to suit, pursuant to the third prong of the agreement's accrual provision (a provision that purports to delay the accrual of a cause of action until [1] plaintiff's discovery of the breach, [2] defendant's failure to cure, repurchase, or substitute defective loans, and [3] plaintiff's demand upon defendant for compliance with the parties' agreement). This "demand requirement" is to be distinguished from the repurchase protocol's more

tion with misplaced reliance on *ACE Sec. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc.*, a case in which the plaintiffs "admittedly failed to fulfill the condition precedent" upon which *all* of their claims were based (25 NY3d 581, 599 [2015]). The failure to fulfill the condition prior to suit meant that the plaintiffs' action was not validly commenced (*id.* at 589), or, as this Court put it, "rendered their summons with notice a nullity" (*ACE Sec. Corp. v DB Structured Prods., Inc.*, 112 AD3d 522, 523 [1st Dept 2013], *affd* 25 NY3d 581 [2015]). Consequently, there was no need for the Court of Appeals in *ACE* to consider the relation-back doctrine: There was simply no valid action to which the claims could relate back (25 NY3d at 589, 599; *see also Southern Wine & Spirits of Am., Inc. v Impact Envtl. Eng'g, PLLC*, 80 AD3d 505, 505-506 [1st Dept 2011] ["Relation back . . . is dependent upon the existence of a valid preexisting action"]).

Importantly, *ACE* did not foreclose the possibility that the relation-back doctrine could apply where, as here, a plaintiff timely commences a valid action on some claims, but has failed to fulfill a procedural prerequisite to suit with regard to subsequent claims.[2] This Court's subsequent decision in *Nomura*—which was published after the motion court's ruling in

general "notice requirement," which is not part of the accrual provision. The demand requirement is what defendant relies on as a procedural condition precedent (plaintiff "cannot sue for repurchase of loans without meeting the conditions to suit stated in the Accrual Clause, including the Demand Requirement").

However, as the motion court properly decided, the accrual provision is unenforceable. Indeed, this Court recently voided a nearly identical provision as against public policy, because it is essentially an attempt, agreed upon at the inception of liability, to delay the accrual of a cause of action based on an impermissible "discovery" rule (*Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts. Corp.*, 143 AD3d 15 [1st Dept 2016]). As a result, the demand requirement, contained within the accrual provision, is also unenforceable.

Thus, as the majority's opinion implies by omitting discussion of the accrual provision's demand requirement and focusing on the notice requirement, the notice requirement is the only provision in the repurchase protocol that can be construed as a procedural prerequisite to suit.

2. The *ACE* Court did not address the import of a repurchase protocol that triggers a cure period in the event of "discovery by" the defendant. Here, however, the repurchase protocol provided a 60-day "cure period" beginning upon either (1) plaintiff's notice to defendant of breaches in the loans' representations and warranties, *or* (2) defendant's discovery of breaches.

As the majority recognizes, plaintiff was not required to provide notice to defendant before commencing an action based on allegations that defendant independently discovered breaches of the representations and warranties in the agreement. Therefore, we all agree that this action was timely commenced on those grounds.

this case—sheds light on this issue. In *Nomura*, this Court applied the relation-back doctrine to certain claims as to which the plaintiffs had failed to fulfill a condition precedent of providing notice and a cure period (133 AD3d at 108).[3] The *Nomura* Court correctly distinguished *ACE* and permitted relation back of the belated claims because, "[u]nlike the situation in *ACE*, there were some timely claims" to which the subsequent claims could relate back (*id.* [citation omitted]; *see also Mastr Adjustable Rate Mortgages Trust 2006-OA2 v UBS Real Estate Sec. Inc.*, 2016 WL 1449751, *5-6, 2016 US Dist LEXIS 49017, *16-18 [SD NY, Apr. 12, 2016, 12-cv-7322 (PKC)] [discussing *Nomura* and *ACE*, and "conclud(ing) that because the Complaint includes a timely contract claim, the Trusts may assert additional breach claims relating to the same contract, and that they relate back to the filing of the initial Complaint"]). Such is the case before us. Plaintiff's action was timely and validly commenced, providing the anchor to which the subsequent claims can be tethered.

I am unconvinced by the majority's attempt to distinguish *Nomura* on its facts. The majority accepts defendant's argument against relation back because the plaintiff in *Nomura*, unlike plaintiff in this case, had sent presuit letters that "put [the] defendant on notice that [the plaintiffs] were investigating the mortgage loans and might uncover additional defective loans for which claims would be made" (133 AD3d at 108). This, however, is a distinction without a difference: The presuit notices in *Nomura* may have complied with the condition precedent related to the specific loans mentioned in those notices, and they may have put the defendant on notice that additional breaches might be discovered; however, those presuit notices had nothing to do with satisfying the procedural condition precedent with regard to the claims that related back (i.e., "claims relating to loans that [the] plaintiffs failed to mention in their breach notices or that were mentioned in breach notices sent less than 90 days before [the] plaintiffs commenced their actions" [*id.*]).

In any event, while the plaintiffs' submission of presuit notices in *Nomura* supported the application of the relation-back doctrine, it was not necessary to the disposition of that issue. Here, as in *Nomura* (but not in *ACE*), "there were some

---

**3.** This Court's decision in *Nomura* is currently pending on appeal to the Court of Appeals, although the briefs indicate that the relation-back issue is not part of that appeal.

timely claims" to which the subsequent, improperly noticed claims can relate back (*see id.*). Furthermore, as in *Nomura*, plaintiff "allege[d] that defendant already knew, based on its own due diligence, that certain loans in the trusts at issue breached its representations and warranties" (*id.*). The majority's narrow reading of *Nomura* overlooks the liberal relation-back standard set forth in CPLR 203 (f), and diverts attention from the "salient inquiry[,] . . . whether, as the statute provides, the original pleading gives notice of the transactions . . . [or] occurrences . . . to be proved pursuant to the amended pleading" (*Giambrone v Kings Harbor Multicare Ctr.*, 104 AD3d 546, 548 [1st Dept 2013] [internal quotation marks omitted]).[4]

The implication of the majority's ruling is that *Nomura* was wrongly decided with respect to its application of the relation-back doctrine. Were the majority to sincerely apply its reading of *ACE* to the facts of *Nomura*, it would have to deem the relation-back doctrine inapplicable because, with at least some of their claims, the *Nomura* plaintiffs failed to comply with the

---

4. Under this standard, I would hold that plaintiff's original summons with notice gave defendant notice of the transactions or occurrences sought to be proved—namely, the securitization and sale of the loans. Whether defendant had notice of the particular *claims* in the later-filed complaint is immaterial (*see* CPLR 203 [f]; *Koch v Acker, Merrall & Condit Co.*, 114 AD3d 596 [1st Dept 2014]; *Giambrone*, 104 AD3d at 547-548; *Jennings-Purnell v Jennings*, 107 AD3d 513 [1st Dept 2013]).

The original pleading gave defendant notice that the action was one "for breach of contract . . . arising from Defendant's breaches of various representations and warranties regarding certain mortgage loans sold to the Trust"; that the "Closing Date" of the securitization transaction and creation of the Trust was May 31, 2007; that "[d]efendant made certain contractual representations and warranties in the Trust transaction documents concerning the mortgage loans it originated that were sold and securitized in the Trust"; and that the breaches of the representations and warranties "pervade[d] the entire pool of loans."

This was sufficient to put defendant on notice that plaintiff sought to prove the transaction from which the breaches allegedly arose and that additional claims of breaches in other loans might follow.

Although the majority apparently finds that the summons with notice could not fulfill the agreement's notice requirement ("[A] pleading notice and a breach notice are not natural substitutes for one another"), it overlooks the fact that the parties' contract did not specify any particular form of notice. The agreement does not define the term "notice," and section 11 of the agreement, titled "Notices," merely specifies that notices "shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at [specified addresses]." Accordingly, the agreement does not preclude a summons with notice from satisfying the notice requirement.

procedural prerequisite of providing notice and allowing a cure period before commencing the action. Instead, the majority claims that its ruling is consistent with *Nomura,* resorting to an inconsequential factual distinction. Yet, as CPLR 203 (f) and *Nomura* instruct, a claim may relate back, even where the plaintiff has failed to fulfill a procedural condition precedent, so long as there is a timely, valid action to which the claims can relate back (and where the original pleading gives notice of the transaction or occurrence to be proved). Although the prerequisite of notice and a cure period ordinarily gives a party an opportunity to avoid litigation, in these circumstances the condition is rendered irrelevant by plaintiff's having already commenced an action on related grounds. Moreover, as plaintiff did, in fact, issue breach notices as late as November 2013, it complied with the condition, and the cure period has lapsed.

Finally, plaintiff argues that any dismissal of its claims for failure to fulfill a condition precedent should be without prejudice, because CPLR 205 (a)'s savings clause permits the refiling of such an action within six months of dismissal (*see Southern Wine & Spirits of Am., Inc. v Impact Envtl. Eng'g, PLLC,* 104 AD3d 613 [1st Dept 2013], *supra*). I am inclined to agree, since a dismissal for failure to comply with a condition precedent is not a judgment on the merits (*see id.* at 613), and CPLR 205 (a) "implements the vitally important policy preference for the determination of actions on the merits" (*Matter of Goldstein v New York State Urban Dev. Corp.,* 13 NY3d 511, 521 [2009] [internal quotation marks omitted]). Nonetheless, in these circumstances, since plaintiff timely and validly commenced an action on other claims that survive (as we unanimously agree), the savings statute is unnecessary, because the later-added claims can be deemed to relate back to the timely filed summons with notice. As I see it, the majority's only real accomplishment in precluding the operation of the relation-back doctrine is that it prevents (or delays) a court from adjudicating these claims on their merits.

RENWICK, SAXE and RICHTER, JJ., concur with GISCHE, J.; ACOSTA, J.P., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered March 4, 2015, affirmed, with costs.