Lehman XS Trust v. Greenpoint Mortgage Funding, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term 2017

(Argued: April 17, 2018        Decided: February 6, 2019)

Docket 17-1290

LEHMAN XS TRUST, SERIES 2006-GP2, (LXS 2006-GP2), by U.S. BANK
NATIONAL ASSOCIATION, solely in its capacity as Trustee, LEHMAN XS
TRUST, SERIES 2006-GP3, (LXS 2006-GP3), by U.S. BANK NATIONAL
ASSOCIATION, solely in its capacity as Trustee, LEHMAN XS TRUST, SERIES
2006-GP4, (LXS 2006-GP4), by U.S. BANK NATIONAL ASSOCIATION, solely in
its capacity as Trustee,

*Plaintiffs-Appellants*,

v.

GREENPOINT MORTGAGE FUNDING, INC.,

*Defendant-Appellee*.[*]

————————

Before:
        WESLEY, CHIN, AND CARNEY, *Circuit Judges*.

        Plaintiff U.S. Bank National Association ("U.S. Bank") appeals from a
judgment entered in the United States District Court for the Southern District of
New York (Carter, *J.*) dismissing its second amended consolidated complaint as
untimely. U.S. Bank argues, among other things, that the district court erred in

---

[*] The Clerk of the Court is respectfully directed to amend the official caption as noted
above.

dismissing its complaint because (1) its claim for indemnification under the contract in dispute is independent of its claim for breach of that contract, and the former claim therefore was timely filed in federal court; and (2) its claim for indemnification based on separate contracts executed at a later date relates back to the original state-court filing under Federal Rule of Civil Procedure 15(c). We disagree. AFFIRMED.

—————————————

HECTOR TORRES (David J. Abrams, David J. Mark, *on the brief*), Kasowitz Benson Torres LLP, New York, NY, *for Plaintiffs-Appellants*.

THEODORE R. SNYDER (James A. Murphy, New York, NY; Cameron S. Matheson, Glen Allen, VA, *on the brief*), Murphy & McGonigle, P.C., *for Defendant-Appellee*.

—————————————

WESLEY, *Circuit Judge*:

This appeal is the most recent chapter in the ongoing saga of the last decade's housing finance crisis. At the core of the appeal are three trusts (the "Trusts") composed of residential mortgage-backed securities that Defendant-Appellee GreenPoint Mortgage Funding, Inc. ("GreenPoint") sold in 2006 to Lehman Brothers Holding, Inc., and Lehman Brothers Bank, FSB (collectively, "Lehman"), with Plaintiff-Appellant U.S. Bank acting as Trustee. Six years after the sale, in 2012, a forensic review of the Trusts revealed that nearly all of the

sample mortgages GreenPoint sold to Lehman were in breach of the representations and warranties ("R & Ws") GreenPoint made in its Flow Mortgage Loan Purchase and Warranties Agreements ("MLPAs") with Lehman.

GreenPoint failed to cure or repurchase the loans within the contractual time frames. As a result, the Federal Housing Finance Agency ("FHFA")—acting on behalf of U.S. Bank as Trustee and as conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"),[1] which in turn was the beneficial owner of some of the certificates issued by the Trusts—filed summonses with notice in New York Supreme Court.[2]

GreenPoint removed the actions to federal court, at which point the FHFA dropped out of the litigation and U.S. Bank as Trustee filed an amended and

---

[1] On September 6, 2008, Freddie Mac was placed into conservatorship by the FHFA pursuant to 12 U.S.C. § 4617.

[2] In the New York courts, a plaintiff commences an action "by filing a summons and complaint or summons with notice." N.Y. C.P.L.R. § 304(a). A party may elect to file a summons with notice if the party is not prepared to serve the complaint; in that case, the summons must put the defendant on notice of "the nature of the action and the relief sought," as well as "the sum of money for which judgment may be taken in case of default." *Id.* § 305(b).

consolidated complaint.[3] After discovery and the filing of a second amended consolidated complaint, GreenPoint moved for summary judgment as to three counts of this complaint, and to dismiss as to the fourth count, arguing, among other things, that the claims were barred by New York's statute of limitations.

The district court concluded, for various reasons discussed in this opinion, that none of U.S. Bank's claims was timely. The issue before this Court is whether any of U.S Bank's claims survive GreenPoint's motions for summary judgment and dismissal. We affirm the district court's conclusion that none does.

## BACKGROUND

### I.    Factual Background

In 2006, Lehman, not a party to this appeal, purchased aggregated pools of residential home mortgages from GreenPoint.[4] The sales were governed by two

---

[3] The FHFA ceased prosecuting its claims in this case because of a "no action" clause contained in the Trust Agreements. A "no action" clause bars "individual certificate holders from bringing independent law suits which are more effectively brought by the trustee unless certain exceptions are met." *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 n.8 (2d Cir. 2015) (cleaned up) (internal quotation marks omitted) ("*Deutsche Bank*").

[4] In 2006, before Lehman began bankruptcy proceedings, U.S. Bank entered into agreements to serve as Trustee of the Trusts at issue in this case.

4

MLPAs, each of which contained a series of R & Ws as to the quality of the mortgage loans.[5] When Lehman purchased the loans from GreenPoint in 2006, they had an aggregate principal balance exceeding $3.39 billion.

Lehman conveyed the mortgage loans and its rights under the MLPAs to a depositor (also not a party to this appeal), which then conveyed the mortgage loans to three Trusts—GP2, GP3, and GP4—via another set of contracts denominated "Trust Agreements."[6] The last dates on which Lehman purchased mortgage loans from GreenPoint (*i.e.*, the effective dates of the R & Ws) were May 15, 2006 (GP2), June 15, 2006 (GP3), and July 17, 2006 (GP4). The Trusts closed on

---

[5] Although the MLPAs at issue are separate contracts, the language relevant to the issues on appeal is identical in the two documents, and U.S. Bank treats the documents as one in its brief to this Court. The first MLPA was signed between Lehman Brothers Bank, FSB and GreenPoint in 2001; the second MLPA was signed between Lehman Brothers Holdings, Inc. and GreenPoint in 2006.

[6] The "depositor" here was a third-party entity called Structured Asset Securities Corporation ("SASC"). SASC's role was to create the three Trusts and, "[c]oncurrently with the execution" of the Trust Agreements, to "transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse . . . all the right, title and interest of the Depositor in and to the Mortgage Loans." J.A. 387, § 2.01(a). In other words, the depositor's role was to create the Trusts. In the same moment that the parties closed on the MLPAs, SASC acquired an interest in the Trust's assets, placed the assets in the Trusts, and transferred the Trusts to the Trustee (U.S. Bank). The signatories to the Trust Agreements were SASC as depositor; U.S. Bank as Trustee; Aurora Loan Services LLC as master servicer (a role not relevant to this appeal); and Lehman as underwriter.

the MLPAs on May 31, 2006 (GP2), June 30, 2006 (GP3), and July 31, 2006 (GP4). Once the mortgage loans were deposited into the Trusts, they were securitized and certificates were issued representing rights to cash flows from the securitized loan portfolios. Investors then purchased the certificates, thereby acquiring an ownership interest in the Trusts. Freddie Mac was one of these investors.[7]

The R & Ws contained in the MLPAs and the Trust Agreements made assertions about the quality of individual mortgage loans and the mortgage loan pools. Specifically, Section 7 of the MLPAs represented that the mortgage loans were "underwritten in accordance with [GreenPoint's] Underwriting Guidelines," J.A. 160, 261; that the mortgage loan schedules were "complete, true and correct," *id.* 154, 255; that GreenPoint possessed complete mortgage files, *id.* 161, 262; and that, except as specifically scheduled, the loan-to-value ratio for the mortgage loans did not exceed 80%, *id.* 158, 259. The MLPAs provided that GreenPoint made

_____

[7] Freddie Mac was the beneficial owner of certificates in a single class issued by each of the Trusts. It did not, however, own more than 25% of "each Class affected thereby" the alleged default, a condition the contractual no action clause required for a certificate holder to commence litigation. Although we note that GreenPoint appears to be correct that the FHFA (acting as conservator for Freddie Mac) did not satisfy this condition, we express no judgment on GreenPoint's merits argument that the FHFA lacked standing to bring suit because of the no action clause.

these R & Ws "as of" each closing date. Section 2.03 of the Trust Agreements incorporated the R & Ws from the MLPAs.

In an effort to ensure compliance with the R & Ws, the MLPAs and the Trust Agreements created a contractual remedy in the event that GreenPoint breached. Under Section 8 of the MLPAs, upon learning of a breach, GreenPoint had sixty days to "use its best efforts promptly to cure such [b]reach in all material respects." *Id.* 165, 268. If the breach could not be cured, Section 8 of the MLPAs provided that GreenPoint "shall, at the Purchaser's option, repurchase such Mortgage Loan" at an established repurchase price. *Id.* The Trust Agreements included an identical clause, except they gave GreenPoint ninety days from the discovery of the breach to cure or repurchase. The same section of the MLPAs contained an Accrual Provision that established how the parties would proceed in the event of a breach.[8]

---

[8] The Accrual Provision states:

> Any cause of action against [GreenPoint] relating to or arising out of the Breach of any [R & Ws] . . . shall accrue as to any Mortgage Loan upon (i) discovery of such Breach by the Purchaser or notice thereof by [GreenPoint] to the Purchaser, (ii) failures by [GreenPoint] to cure such Breach or repurchase such Mortgage Loan as specified above, and

Section 9 of the MLPAs also contained an indemnification clause, which reads, in relevant part:

> [GreenPoint] agrees to indemnify [Lehman] and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that [Lehman] may sustain in any way related to (i) any act or omission on the part of [GreenPoint] or any other person or entity in the origination, receiving, processing, funding or servicing any Mortgage Loan prior to the related Transfer Date or otherwise arising from the transfer of servicing of the Mortgage Loans provided for in this Agreement, [and] (ii) any assertion based on, grounded upon [or] resulting from a Breach of any of [GreenPoint's R & Ws] contained herein . . . . [GreenPoint] shall immediately notify [Lehman] if a claim is made by a third party with respect to this Agreement or the Mortgage Loans . . .

J.A. 167, 270.

In addition to the indemnification provisions included in the MLPAs, GreenPoint (together with Lehman and SASC) entered into separate Indemnification Agreements for each Trust. The agreements provided that GreenPoint would "indemnify and hold harmless" the other parties to the MLPAs

---

(iii) demand upon [GreenPoint] by the Purchaser for compliance with this Agreement.

J.A. 166, 269.

and Trust Agreements "from and against any and all losses, claims, liabilities, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses" that "arise out of or are based upon any untrue statement or alleged untrue statement of any material fact" or the omission of any such fact in the information GreenPoint provided to Lehman. *Id.* 1062, 1071, 1080. The relevant "as of" dates for the Indemnification Agreements were May 30, 2006 (GP2); June 28, 2006 (GP3); and July 28, 2006 (GP4).

In 2012, Freddie Mac conducted a forensic review of the loan files[9] and determined that an overwhelming percentage of the mortgage loans in the Trusts breached GreenPoint's R & Ws under the MLPAs and Trust Agreements.[10] U.S.

---

[9] The operative complaint discusses the forensic review in the passive voice, making it impossible for us to determine from the complaint alone who initiated the review in 2012 and why. *See, e.g.,* J.A. 1129 ¶ 41 ("Forensic reviews were undertaken . . . ."). However, U.S. Bank's brief to this Court explains that Freddie Mac—not U.S. Bank—conducted the review, presumably after it and other certificate holders suffered major losses on their investments because of high rates of default. Appellant Br. 9.

[10] U.S. Bank alleges that this analysis showed that 93.5% of the sampled loans in the GP2 Trust were in breach, 99.8% of the sampled loans in the GP3 Trust were in breach, and 100% of the sampled loans in the GP4 Trust were in breach. The breaches included misrepresentations of borrower income, leading to a higher debt-to-income ratio than GreenPoint's guidelines permitted; misrepresentations of occupancy status of homes to which the mortgage loans related, decreasing the value of the mortgage loans; improper calculations of debt and debt-to-income ratios; failure to verify borrower assets or

9

Bank submitted breach notices to GreenPoint on the following dates: March 19, 2012, and August 24, 2012, for the GP2 Trust; March 19, 2012, for the GP3 Trust; and April 17, 2012, for the GP4 Trust. GreenPoint did not cure or repurchase within the sixty- or ninety-day periods established in the MLPAs and Trust Agreements, respectively.

## II.    Procedural History

Almost immediately after the sixty-day cure periods expired, the FHFA commenced three actions against GreenPoint in New York Supreme Court, New York County, "as conservator for" Freddie Mac and "on behalf of" U.S. Bank as Trustee. The FHFA filed summonses with notice for the GP2, GP3, and GP4 Trusts, respectively, on May 30, 2012, June 29, 2012, and July 30, 2012, exactly one day ahead of the six-year anniversaries of the closing dates of the three Trusts. GreenPoint removed the actions to the United States District Court for the Southern District of New York on October 24, 2012. On November 21, 2012, the

_____

qualifying loans with insufficient credit score; and incorrect calculations of loan-to-value and cumulative loan-to-value ratios, which, according to U.S. Bank, are allegedly "among the most important measures of the risk of a mortgage loan." J.A. 1130–41.

district court consolidated the three actions and authorized the plaintiffs to file a single consolidated complaint, which they did on November 26, 2012.

The FHFA dropped out of the litigation in January 2013, and U.S. Bank—now the sole plaintiff—filed an amended consolidated complaint.[11] The amended consolidated complaint included three causes of action related to breach of contract and indemnification. GreenPoint moved to dismiss, and the district court denied the motion. *See Lehman XS Tr., Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc.*, 12 Civ. 7935, 12 Civ. 7942, & 12 Civ. 7943, 2014 WL 1301944 (S.D.N.Y. Mar. 31, 2014).

The parties commenced discovery. Although they completed that task by early December 2014, U.S. Bank requested a stay of further proceedings pending the New York Court of Appeals' resolution of an appeal taken from *ACE Securities*

---

[11] GreenPoint invoked federal jurisdiction under 28 U.S.C. § 1345, which provides that "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." As the removal notices indicated, the FHFA is a federal agency for the purposes of § 1345. *See* 12 U.S.C. § 4511(a) ("There is established the Federal Housing Finance Agency, which shall be an independent agency of the Federal Government."). When the FHFA dropped out of the suit, however, U.S. Bank filed its amended consolidated complaint under diversity jurisdiction as well as 28 U.S.C. § 1345.

*Corp. v. DB Structured Products, Inc.*, 112 A.D.3d 522 (1st Dep't 2013), *leave to appeal granted by* 23 N.Y.3d 906 (2014). Soon after the Court of Appeals issued its opinion, *see ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581 (2015) ("*ACE*"), U.S. Bank moved for and was granted leave to file a second amended consolidated complaint ("SACC"). It filed that complaint, which is the focus of the present appeal, on March 3, 2016.

The SACC mirrored the first amended consolidated complaint with respect to the first two causes of action: (1) breach of contract seeking specific performance, based on GreenPoint's failure to repurchase the noncompliant loans or cure its breach of the R & Ws; and (2) breach of contract seeking monetary damages, based on the same allegations. The SACC expanded the third cause of action—indemnification based on language in the MLPAs and the Trust Agreements—to seek not only expenses incurred in connection with the first two causes of action, but also a monetary award of $1.1 billion. Finally, the SACC added a fourth cause of action for indemnification arising under the separate Indemnification Agreements. The fourth claim sought reimbursement for losses

based on a separate set of R & Ws that GreenPoint made when the parties executed the Indemnification Agreements.

GreenPoint moved for summary judgment on the first three claims, arguing they were time-barred. It moved for dismissal of the fourth claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the FHFA and U.S. Bank lacked standing and that U.S. Bank had failed to state a claim. The district court granted the motion for summary judgment and dismissed the fourth claim as time-barred. *See Lehman XS Tr., Series 2006-GP2 v. GreenPoint Mortg. Funding, Inc.*, 12 Civ. 7935, 12 Civ. 7942, & 12 Civ. 7943, 2017 WL 1293773, at *10 (S.D.N.Y. Mar. 29, 2017). The court found that the contractual claims (claims one and two) were time-barred because the FHFA filed the summonses with notice more than six years after the statute of limitations began to run under New York law. *Id.* at *7. With respect to the third claim, seeking indemnification, the court found that U.S. Bank's claim was "not one for indemnification" but instead was "more appropriately characterized as one to recover losses incurred by breach of contract." *Id.* at *8. Accordingly, the court concluded that the third claim, too, was time-barred. Finally, the court held that the fourth claim, also seeking

indemnification, was time-barred because it involved a new set of operative facts and therefore could not relate back to the original complaint pursuant to Federal Rule of Civil Procedure 15(c), even assuming the original complaint was timely filed. *Id.* at *9. U.S. Bank appealed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, mindful that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). We also review *de novo* a district court's grant of a motion to dismiss, including its interpretation and application of statutes of limitations and contractual terms. *Deutsche Bank*, 810 F.3d at 865. When we sit in diversity jurisdiction and must decide a question of New York state law, we are bound "by the law of New York as interpreted by the New York Court of Appeals." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (*per curiam*).

In *ACE*, 25 N.Y.3d at 596, the New York Court of Appeals held that a cause of action for breach of R & Ws that guarantee particular facts as of a certain date,

14

but do not guarantee future performance, accrues on the date those R & Ws become effective. We were called upon to apply *ACE* in *Deutsche Bank*. *Deutsche Bank* involved facts similar to the case now before us: a trustee, Deutsche Bank, sought to recover from Quicken Loans, which originated a pool of mortgage loans that Deutsche Bank later discovered breached R & Ws made in the mortgage-loan agreements. 810 F.3d at 863. The issue was whether the trustee's cause of action for breach of the R & Ws accrued when the R & Ws became effective (making the claims untimely) or when the trustee demanded repurchase or cure and was rebuffed (making the claims timely). Looking to *ACE*, we held that the trustee's cause of action accrued "[i]mmediately upon effectiveness of the R & Ws," because at that point, "the Trustee was entitled to demand the contractual remedy—cure or repurchase—as to any material breach." *Id.* at 866. We also rejected the trustee's argument that the remedy clause was substantive (meaning a condition precedent to a party's performance) rather than procedural (seeking a remedy for a preexisting wrong). *Id.* at 867. Because we deemed the demand process to be "merely procedural," we held that it did not "delay accrual of the cause of action," making the trustee's claims untimely. *Id.* (citing *ACE*, 25 N.Y.3d at 597).

U.S. Bank argues that, notwithstanding *Deutsche Bank*, *ACE*, and the numerous cases that followed,[12] its causes of action for breach of contract accrued not when the R & Ws became effective, but when GreenPoint was made aware of the breaches and failed to cure. According to U.S. Bank, this case is distinguishable from *Deutsche Bank* and *ACE* because here, sophisticated parties negotiated for a contract provision establishing that a cause of action for a breach of the R & Ws "shall accrue," J.A. 166, 269, only when the Trustee made a demand for compliance. U.S. Bank made no such demand until 2012.

While this appeal was pending, the New York Court of Appeals granted review in a similar case, *Deutsche Bank Nat'l Tr. Co. v. Flagstar Capital Mkts. Corp.*, 32 N.Y.3d 139 (2018). U.S. Bank pinned its hopes on *Flagstar* and urged us to await the New York high court's decision. *Flagstar*, U.S. Bank argued, would "definitively determine the validity of an express accrual clause under New York

---

[12] *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, 643 Fed. App'x 48 (2d Cir. 2016) (summary order); *Wells Fargo Bank, NA v. JPMorgan Chase Bank, N.A.*, 643 Fed. App'x 44 (2d Cir. 2016) (summary order); *Homeward Residential, Inc. v. Sand Canyon Corp.*, 12 Civ. 7319, 2018 WL 557913 (S.D.N.Y. Jan. 24, 2018); *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, 15 Civ. 8153, 2016 WL 5118298 (S.D.N.Y. Sept. 20, 2016), *appeal docketed*, 16-3560 (2d Cir. 2016); *Bank of N.Y. Mellon v. WMC Mortg., LLC*, 151 A.D.3d 72 (1st Dep't 2017); *U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 147 A.D.3d 79 (1st Dep't 2016).

law." Appellant Br. 19. *Flagstar* did just that, but U.S. Bank's prediction of vindication proved wrong. Under *Flagstar*, an express accrual clause cannot operate to delay the commencement of a limitations period under New York law, regardless of the parties' sophistication or clearly expressed intentions. *See Flagstar*, 32 N.Y.3d at 139. In other words, *Flagstar* clarified the sole issue that U.S. Bank asked us to resolve: namely, whether sophisticated parties could create a substantive condition precedent by including an express accrual clause that would delay the running of the statute of limitations. *See id.* The New York Court of Appeals answered that question in the negative. The rules from *ACE* and *Deutsche Bank* therefore govern U.S. Bank's contractual claims here.

## I. Causes of Action One and Two: Breach of Contract

The statute of limitations on a breach of contract claim in New York is six years, and this period begins to run when a breach occurs. *See* N.Y. C.P.L.R. §§ 203(a), 213(2); *Deutsche Bank*, 810 F.3d at 865 (citing *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)). As we explained in *Deutsche Bank* on facts indistinguishable from those now before us, "the statute of limitations began to

17

run on the date the R & Ws became effective and were either true or false at that time." 810 F.3d at 867.

The undisputed facts are that the effective dates of the R & Ws were May 15, 2006 (GP2); June 15, 2006 (GP3);[13] and July 17, 2006 (GP4). The FHFA filed in state court on May 30, 2012 (GP2); June 29, 2012 (GP3); and July 30, 2012 (GP4). As the district court correctly concluded, "[e]ach of these actions was filed over six years after the statute of limitations on the breach of contract actions began running." *Lehman XS Tr.*, 12 Civ. 7935, 12 Civ. 7942, & 12 Civ. 7943, 2017 WL 1293773, at \*7. The first two causes of action were therefore untimely under settled New York law. The district court properly granted summary judgment to GreenPoint.

## II.  Cause of Action Three: Indemnification Under Section 9 of the MLPAs

When an aggrieved party recovers not from a wrongdoer but from a third party, the third party's subsequent claim against the wrongdoer becomes one for

---

[13] The district court's reasoned opinion includes a scrivener's error in its recitation of the effective dates of the R & Ws. *See Lehman XS Tr.*, 12 Civ. 7935, 12 Civ. 7942, & 12 Civ. 7943, 2017 WL 1293773, at \*7 (indicating that the last sale date for the GP3 Trust was "June 15, 2008"). It is clear, however, from the rest of the opinion, the complaint, the parties' submissions to the district court, and the parties' papers on appeal that the final date of sale for loans in the GP3 Trust was June 15, 2006.

indemnification. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2d Cir. 2003) (applying New York law) (quoting *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492–93 (1989)); *see also Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990) (indemnification arises when "a party held legally liable to plaintiff shifts the entire loss to another").

Thus, under New York law, absent "unmistakably clear" language in an indemnification provision that demonstrates that the parties intended the clause to cover first-party claims, an agreement between two parties "to indemnify" each other does not mean that one party's failure to perform gives rise to a claim for indemnification. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 21 (2d Cir. 1996); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("Unless the indemnification clause refers exclusively or unequivocally to claims between the indemnitor and indemnitee, the court must find the agreement to be lacking evidence of the required intent to cover such claims." (internal quotation marks omitted)). Consequently, absent such language, "[w]here parties agree to 'indemnify' each other for losses incurred by a breach of contract, where those lo[s]ses do not relate to liability to a third party, the

characterization of 'indemnification' is no more than an epithet for recovery for breach of contract." *Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 364 (S.D.N.Y. 2016). Put simply, "[a]n action does not become [one] for indemnity merely because the pleader has so denominated it." *Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 350 (2d Cir. 1986) (quoting *Bunker v. Bunker*, 80 A.D.2d 817, 817 (1st Dep't 1981)) (internal quotation marks omitted).

Here, the distinction between a claim for breach of contract and one for indemnification is relevant in determining the timeliness of U.S. Bank's third claim. Under New York law, a cause of action for contractual indemnification "does not arise until liability is incurred by way of actual payment" to a third party. *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265 (1st Dep't 1999) (internal quotation marks omitted); *see also McDermott v. City of New York*, 50 N.Y.2d 211, 216 (1980). Therefore, if U.S. Bank is correct that it has a cause of action for indemnification, the third claim in the SACC was timely. If, however, U.S. Bank's indemnification claim is merely a reformulation of its breach-of-contract claims,

20

the third cause of action was untimely for the same reasons as the first two causes of action.

According to U.S. Bank, GreenPoint should pay for breaching the promises it made in the MLPAs concerning the quality of the mortgages it sold. This claim, U.S. Bank insists, is not the same as its breach of contract claims because "the parties here bargained for two separate remedies contained in two separate sections of the MLPAs." Appellant Br. 28. U.S. Bank contends the third claim is "independent" because the indemnification provisions found in Section 9 of the MLPAs allow it to "pursue any and all remedies otherwise available at law or in equity, including, but not limited to, the right to seek damages," J.A. 168, 270, in addition to the repurchase provision found in Section 8. As counsel explained at oral argument, U.S. Bank is seeking "damages that relate to the misrepresentations, so that unlike the initial claim[s], there's an additional element of proof that has to be established." Oral Arg. at 2:10–3:30.

Had U.S. Bank paid a certificate holder for harms to the certificate holder stemming from GreenPoint's breach, its claim against Greenpoint would be for indemnity. But the claim here seeks payment to U.S. Bank arising from

GreenPoint's violations of the R & Ws that it made to U.S. Bank as Trustee. It is a breach of contract claim, plain and simple.

We reach this conclusion for two reasons. First, Section 9 of the MLPAs does not "unequivocally" or in "unmistakably clear" language extend to first-party claims. *See* J.A. at 167–68, 270 ("[GreenPoint] agrees to indemnify [U.S. Bank] and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that [U.S. Bank] may sustain . . . [and GreenPoint] shall immediately notify [U.S. Bank] if a claim is made by a third party with respect to this Agreement or the Mortgage Loans."). In the absence of such language, the provision must be read to contemplate an actual indemnification scenario, in which U.S. Bank would be entitled to repayment if it paid out costs to a third party. U.S. Bank does not allege that to date it has paid on claims to third parties directly tied to GreenPoint's breaches of its R & Ws.

Second, the allegations in the SACC belie the argument that U.S. Bank is seeking to recover something different under its indemnification claim than what it seeks under the breach of contract claims. *See* J.A. at 1148–50, ¶ 99 ("To date, the

22

Trusts have sustained approximately $1.1 billion in aggregate collateral-level losses and damages *as a result of GreenPoint's breaches of its R & Ws and failure to repurchase breaching Mortgage Loans*." (emphasis added)). The argument that Section 9 provides an "independent" remedy is, therefore, meritless: the indemnification claim cannot be "independent" if its success directly depends on the breaches of the R & Ws in the MLPAs outlined in the contract claims. As the New York Court of Appeals explained in *ACE*, even if two sections of the contract provide alternative *remedies* for the same breach, "the underlying act the Trust complains of is the same: the quality of the loans and their conformity with the [R & Ws]." 25 N.Y.3d at 596.

Thus, U.S. Bank's "indemnification" claim is in reality a repackaged version of its breach of contract claims. *See Goodpasture*, 782 F.2d at 350. There is no "indemnified" party who covered a loss that should have been paid by a third-party obligor. There is thus no "independent" claim for indemnification. U.S. Bank cannot circumvent the statute of limitations by recasting its contract claim as one

for indemnification. The district court properly dismissed the third claim as untimely.[14]

## III.    Cause of Action Four: Breach of the Indemnification Agreements

In its fourth claim, raised for the first time in the SACC filed on March 3, 2016, U.S. Bank alleges breaches of the Indemnification Agreements. These three agreements (separate and distinct from the indemnification clauses in the MLPAs) are documents the parties signed immediately before they closed on the MLPAs. In them, GreenPoint independently represented that it had complied with the R & Ws it made in the MLPAs. All three agreements contain the same statement: "GreenPoint hereby represents and warrants, as of the date of the Prospectus Supplement, that the GreenPoint Information is true and correct in all material

---

[14] GreenPoint also argues that this claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the FHFA did not have standing to file the summonses with notice in the first instance. U.S. Bank may not, GreenPoint argues, be substituted as the real party in interest under Federal Rule of Civil Procedure 17(a) because there was no "honest mistake" in the initial naming of the plaintiff. In a letter brief it submitted to this Court pursuant to Federal Rule of Appellate Procedure 28(j), U.S. Bank directs our attention to a recent opinion from this Court holding that "a plaintiff's honest mistake is not a precondition for granting a Rule 17(a)(3) motion." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 227 (2d Cir. 2018). Because we agree with the district court that U.S. Bank's claim was untimely on a different basis, we decline to address this argument.

24

respects and includes all 'Seller Information' as defined in the [MLPAs]." J.A. 1063

(GP2), 1072 (GP3), 1081 (GP4).

According to U.S. Bank, under Federal Rule of Civil Procedure 15(c), its claim for breach of the Indemnification Agreements relates back to the filing dates of the state court summonses with notice, therefore rendering the claim timely, at least as to the GP2 and GP4 Trusts.[15] We disagree.

Rule 15(c) provides that an amendment to a pleading "relates back to the date of the original pleading" where, as relevant here, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

---

[15] The FHFA filed its summons with notice for the GP2 Trust on May 30, 2012, exactly six years after May 30, 2006, the date that the GP2 Indemnification Agreement was executed. Therefore, if U.S. Bank's claim were to relate back to this date, it would be timely. Similarly, the GP4 Indemnification Agreement was executed on July 28, 2006, and six years from that date was July 28, 2012, a Saturday. The time to file therefore fell on "the next succeeding business day"—Monday, July 30, 2012. *See* N.Y. Gen. Constr. § 25-a(1); Fed. R. Civ. P. 6(a)(1). This is precisely the day that the FHFA filed its summons with notice, and, consequently, if U.S. Bank's claim were to relate back to this date, it would be timely as well. U.S. Bank's claim as to the GP3 Trust, however, is untimely even under its "relation-back" theory, because the GP3 Indemnification Agreement was executed on June 28, 2006, and the FHFA filed its summons with notice on June 29, 2012, one day after the statute of limitations had run.

The purpose of Rule 15(c)'s relation-back provision is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted).

Thus, "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." *Id.* (internal quotation marks omitted). This includes claims that are based on different contracts.[16]

---

[16] *See, e.g.*, 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1497 (3d ed. 2018) ("[A]mendments alleging . . . the breach of an independent contract . . . may be subject to the defense of statute of limitations because of a failure to meet the transaction standard."); *see also Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989); *In re Rationis Enters., Inc. of Panama*, 45 F. Supp. 2d 365, 367 (S.D.N.Y. 1999).

The SACC's allegations of breaches of the GP2 and GP4 Indemnification Agreements do not relate back to the filing date of the FHFA's original pleading in New York Supreme Court. The original summonses with notice involved actions for breach of contract and declaratory relief (GP2) and breach of contract, declaratory relief, specific performance, and indemnification (GP3 and GP4) under the provisions of the MLPAs. J.A. 23 (GP2), 38 (GP3), 53 (GP4). The focus of the summonses was GreenPoint's contractual obligation "to cure or repurchase from the Trust[s] those mortgage loans where R & Ws have been breached." *Id.* 24, 39, 54. The summonses, in other words, contained no mention of the Indemnification Agreements, and sought recovery only for breaches of the R & Ws in the MLPAs, which governed the initial sale of the mortgage loans from GreenPoint to Lehman. Although the underlying R & Ws in the MLPAs and the Indemnification Agreements employ the same terms, we cannot conclude that GreenPoint was on notice when the FHFA filed the original complaint that the litigation would also involve the Indemnification Agreements. Indeed, the FHFA had no reason to include any claims related to the Indemnification Agreements, in which it had no interest and to which it was never a signatory. Those documents were intended to

outline the scope of GreenPoint's obligation to indemnify Lehman and its successors for claims brought against Lehman by third parties—not to protect certificate holders (like the FHFA) from the sale of unsound securitized mortgage loans.

Simply put, the original complaint and the SACC invoke separate contracts; the signatories to the Indemnification Agreements and the MLPAs are different; and the nature of the claims and the remedies they seek are not the same. *See ASARCO LLC v. Goodwin*, 756 F.3d 191, 202–03 (2d Cir. 2014); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1497 (3d ed. 2018) (collecting cases); *see also Lehman XS Tr.*, 12 Civ. 7935, 12 Civ. 7942, & 12 Civ. 7943, 2017 WL 1293773, at \*9 ("[I]t cannot be said that based on the facts alleged in the original pleading, GreenPoint was given adequate notice that Plaintiff would bring claims pursuant to the Indemnification Agreements."). The fourth cause of action does not relate back to the original filing for claims based on any of the Trusts, and that cause of action was therefore untimely asserted.

## CONCLUSION

The district court properly dismissed U.S. Bank's claims as untimely. For the foregoing reasons, the judgment of the district court granting GreenPoint's motions for summary judgment and to dismiss is **AFFIRMED**.